(71 App. Div. 14.)

INGRAFIA v. SAMUELS.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. NEGLIGENCE—ELEVATOR—EVIDENCE—FINDINGS.
    Plaintiff's intestate rode in the elevator from the sixth to the ground floor in defendant's building. The elevator man opened the gate and stepped out, walking away from the elevator; and, as deceased attempted to follow, the elevator shot upward, catching her against the wall and killing her. The elevator was operated by a rope which had to be pulled with a force of 25 pounds a distance of 26 inches to start it. There were two other persons in the elevator, but neither of them touched the rope. The mechanism was in perfect order, and, when the elevator man heard her scream as the elevator started, he ran back, seized the rope, and stopped it, but not in time to save her life. The evidence did not disclose whether the rope was so situated that it could

be reached by persons standing outside the elevator shaft or on the upper floors when the gates were closed, or whether all such gates were closed. *Held*, that a finding that the accident resulted from defendant's negli‹ gence was justified.

2. SAME—DAMAGES—RECIPIENTS—PROPORTION—INSTRUCTIONS.

In an action by the administratrix of one killed by defendant's negligence, it is not error for the court to refuse to advise the jury as to the proportion the husband, father, brother, and mother of the deceased would receive of the damages awarded.

3. SAME—NEXT OF KIN—CIRCUMSTANCES.

When, in an action for damages by the administratrix of a daughter killed by defendant's negligence, the age, sex, capacity, and situation of the deceased, and the age, business occupation, and condition of her husband, and the fact that she left a father, mother, and brother, were shown, the court properly refused to charge "that, there having been no proof offered as to the condition and circumstances of the next of kin," the jury was justified in passing them over altogether in the consideration of damages.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Guiseppa Ingrafia, as administratrix of Santa Cancialosa, deceased, against Leopold Samuels. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The plaintiff, as administratrix, seeks to recover for the death of her daughter, who was killed on the morning of February 27, 1901, while attempting to leave the elevator at the ground floor of the defendant's building, No. 58 East Eleventh street, owing to its suddenly starting upward and catching her between the car and the first landing. The defendant's premises were provided with an electric elevator, so constructed as to carry both passengers and freight, and was operated by a rope passing through the southwest corner of the car, which, on the lower floor, opened towards the north, by a folding iron gate, into a hallway leading to the street. On the upper landings there were doors on the west side, near the rope. The car used for passengers measured on the inside 3 feet 10 inches by 4 feet 10 inches; the latter measurement apparently being from the north to the south side. To start the elevator, it was necessary to pull the rope with a force of about 25 pounds until it moved at least 26 inches, in order to put on the power. At the ground floor there was an automatic stop, and the operative mechanism was designed to permit the attendant leaving the rope and car if so desired. No difficulty had been experienced with the elevator, which had been installed for about 3 years, and was expected to last for 15, and after the accident an inspector found the mechanism in perfect working order. The man in charge of the elevator had been employed by the defendant in that capacity for over a year. On the morning in question, the plaintiff's intestate, a woman 26 years of age, in good health, employed previously at the rate of about $7 a week by manufacturers of clothing who were on the sixth floor of the building, went up there in the elevator, accompanied by her husband, to collect salary due her. Subsequently the elevator came to take them down, and they entered the car, and went to the opposite side. There was a stop at the fifth floor, when a peddler entered, carrying a large basket, and the car then descended with the four people to the ground floor. There it was stopped by the elevator man, who then left the rope, crossed to the north side of the car, and went in front of the passengers to throw open the folding gate, which was nearly the width of the car, to permit their exit. At that moment the woman was behind the elevator man, and her husband was behind and to one side of her, and back of the husband was the peddler, with the basket, all facing the gate. The elevator man threw aside the gate, stepped out, and went across the hall, at a walk, towards the outside door, where a man was standing. He says he was looking for some one with

freight, and it was testified that he was calling out and whistling. When he had gone about 10 or 12 feet, he heard a scream behind him, and, turning, saw the elevator moving upward. He returned to the shaft, grasped the rope, and pulled; but, before stopping, the car went 3 or 4 feet further, and the woman was caught by the wall and killed. It was testified that the car moved slowly at first, and then shot upward, and only the woman, who was about to step out, was injured; the men remaining in the car. The peddler testified that he had not touched the rope, and no one else in the car was in a position to do so. Why the elevator moved, was not explained. The deceased left a husband, who has a shoeblacking establishment, and a father, mother, and brother, whose circumstances were not stated. In charging the jury, the court, after referring to the statute permitting an administrator to sue, said (quoting from the statute itself), "The damages awarded to the plaintiff may be such a sum  *  *  *  as the jury  *  *  *  deems to be a fair and just compensation for the pecuniary injuries resulting from the decedent's death, to the person or persons for whose benefit the action is brought." Thereafter the court declined the defendant's requests to charge that the husband would be entitled to one half the estate, and the father and brother the other half, and that, no proof having been given as to the circumstances of the next of kin, the jury might pass them over in the consideration of damages, and exceptions were duly taken. The jury returned a verdict for plaintiff for $4,000, and from the judgment so entered the defendant appeals.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Charles A. Wendell, for appellant.
John Palmieri, for respondent.

O'BRIEN, J. The evidence shows that the elevator was in perfect running order, and that it could not have moved from the position where the operator left it unless some one had pulled the rope persistently and with considerable force, thus making the connection with the electric motor. The testimony is no less conclusive that none of those in the car had touched the rope, for the peddler testified that he did not, and he separated the others, who, he says, were facing outward, from the rope. By elimination, therefore, of other causes, the only reasonable conclusion is that the elevator was set in motion by some one on another floor reaching into the shaft and pulling the rope. On the lower floor, as stated, there was provided a folding gate, and on the other floors there were either gates or doors,—how constructed or how fastened, does not appear. Neither does it appear whether or not one could reach into the shaft and pull the rope, or, if the gates or doors were closed, whether they could be readily opened from without. One of two inferences, however, may be drawn,—either that the rope, owing to the construction of the shaft, could be reached and pulled on any floor, or else that the operator had left the gates or doors open when he brought the elevator car down. In either case there was danger of some one on another floor starting the car, and therefore the duty devolved on him of remaining in the car and near the rope until his passengers were safely landed. Imposing such a duty, under the circumstances, is but the equivalent of saying that he was bound to exercise reasonable care. It is conceded that the elevator man deliberately left the car before the others were safely out of it; and thus there

was a question for the jury as to whether his conduct in so doing was negligent or not. That the accident could have been averted had he stayed at his post, or even near the elevator, is evident; for, though he was 10 or 12 feet from it, and walking in the opposite direction, when the car started upward, he was able to return and stop the car when it reached the floor above,—too late, however, to prevent the injury to plaintiff's intestate. His negligence, therefore, in thus leaving the car and its occupants before they had opportunity to safely alight, in view of his knowledge or means of knowing that such an accident could occur, and was to be guarded against, was a failure to observe that reasonable care which, as stated in the recent case of Griffin v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, is required in the maintenance and operation of an elevator. Therein the manner and cause of the accident were different, but the rule enunciated by the court is applicable. It was said:

"The deceased was present by the implied invitation of the defendant extended to him [her] and all others who might have lawful business on the premises to use the elevator as a means of proceeding from one story to another. The defendant therefore owed the duty of using at least reasonable care in seeing that the premises were safe. * * * That no such accident could ordinarily have occurred had the elevator machinery been * * * properly operated seems to me very plain. The court was therefore justified in permitting the jury to infer negligence from the accident,—construing, as I do, the term 'accident' to include not only the injury, but the attendant circumstances."

The appellant insists, however, that the court erred in refusing to charge certain requests. The first error assigned was in declining to advise the jury of the proportions the husband, father, brother, and mother would receive of any award. In refusing this we think no error was committed, for the court had properly charged, in the very language of the statute, that the damages might be such sum as would be a fair compensation for the pecuniary injuries resulting to the persons for whose benefit the action was brought. It was the duty of the jury to fix this sum, and in this they would receive no assistance by instructions concerning the distribution provided by law.

Nor do we think the court erred in refusing to charge the further request "that, there having been no proof offered as to the condition and circumstances of the next of kin," they were justified "in passing them over altogether" in the consideration of damages. That this request was faulty, and was properly refused, a brief review of the authorities will show. What is required is some basis for an award of damages, by proof of the condition and situation of the deceased and of the next of kin. As said in Lockwood v. Railroad Co., 98 N. Y. 526:

"In but few cases arising under this act is the plaintiff able to show direct, specific pecuniary loss suffered by the next of kin from the death; and generally the basis for the allowance of damages has to be found in proof of the character, qualities, capacity, and condition of the deceased, and in the age, sex, circumstances, and condition of the next of kin. The proof may be unsatisfactory, and the damages may be quite uncertain and contingent; yet the jurors in each case must take the elements thus furnished, and make the best estimate of damages they can. There seems to be no other mode of

75 N.Y.S.—46

administering the statute referred to, and protection against excessive damages must be found in the power of courts, in some of the modes allowed by law, to revise or set aside the verdicts of juries."

In the case at bar we have given the sex, age, capacity, and situation of the deceased; and, as to the next of kin, we have the age, business occupation, and condition of the husband, and that the deceased left, also, a father and brother. There was therefore a basis for the award of damages, and the sum of $4,000 was not, under such circumstances, excessive. Although the exact condition of the father and brother were not shown, it would have been error to have passed them over altogether in the estimate of damages. Thus in the case of Kelly v. Railway Co., 14 Daly, 418, where it appeared that the only next of kin of the deceased were a brother and sister in Ireland, and three nephews in New York City, where he carried on the business of junk dealer, and the testimony did not show that he in any way supported these relatives, nor what he earned, nor what the value of his life was to them, it was held that a verdict of $1,000 should not be set aside as excessive. As said by Mr. Justice Finch in Houghkirk v. President, etc., 92 N. Y. 219, 44 Am. Rep. 370:

"The statute implies from the death of the person negligently killed damages sustained by the next of kin. Quin v. Moore, 15 N. Y. 432. Recognizing the generally prospective and indefinite character of those damages, and the impossibility of a basis for accurate estimate, it allows a jury to give what they shall deem a just compensation. * * * They are required to judge, and not merely to guess; and therefore such basis for their judgment as the facts naturally capable of proof can give should always be present, and is rarely, if ever, absent. The pecuniary loss in any such case may be composed of very different elements. It may consist of special damages (that is, of an actual, definite loss, capable of proof and of measurement with approximate accuracy); and also of prospective and general damages, incapable of precise and accurate estimate, because of the contingencies of the unknown future."

The learned judge then illustrated special damages by the element of funeral expenses, and continued:

"To permit the jury to guess at their amount as * * * would be to substitute conjecture for proof, where proof was possible, and a proper basis of judgment attainable. But the value of a human life is a different matter. The damages to the next of kin in that respect are necessarily indefinite, prospective, and contingent. They cannot be proved with even an approach to accuracy, and yet they are to be estimated and awarded, for the statute has so commanded. * * * The age and sex, the general health and intelligence, of the person killed, the situation and condition of the survivors, and their relation to the deceased,—these elements furnish some basis for judgment. That it is slender and inadequate is true, * * * but it is all that is possible, and, while that should be given, * * * more cannot be required. Upon that basis, and from such proof, the jury must judge."

The request to charge, in the form made, in view of the testimony given, was bad, and therefore properly refused.

We think that the judgment and order appealed from should accordingly be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.