GREEN v. URBAN CONTRACTING & HEATING CO. et al.

(Supreme Court, Appellate Division, First Department.  July 7, 1905.)

NEGLIGENCE—ELEVATORS—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Where the machinery of an elevator was in perfect order, and a tenant of the building, on coming to work in the morning, found the elevator standing at a floor, with the door open, and, while waiting for the operator of the elevator to arrive, he stood partly on the elevator and partly on the

floor, talking to persons in the elevator, and for some unaccountable reason the elevator started, whereby he was killed, neither the owner of the building, nor the contractor who operated the elevator, was liable for the death.

O'Brien, P. J., and Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Rachel Green, as administratrix of Charles Green, deceased, against the Urban Contracting & Heating Company and others. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles P. Caldwell, for appellant Urban Contracting & Heating Co.

H. Snowden Marshall, for appellant Oppenheimer.

Charles Steckler, for respondent.

INGRAHAM, J. The defendant Oppenheimer was the owner of a building at the corner of Seventeenth street and Fifth avenue, in the city of New York; having purchased the building in January, 1904. In this building there was a passenger elevator on the Fifth avenue front, and a freight elevator on a passageway opening into Seventeenth street in the rear of the building. The firm of Peller Bros. occupied two of the lofts in the building, and their employés were in the habit of using the freight elevator for access to the Peller lofts. This elevator was operated by electricity, and when the defendant Oppenheimer purchased the premises he found in existence a contract made by the former owner and the defendant Urban Contracting & Heating Company, by which the contracting company agreed "to furnish and pay a competent engineer, who will operate the freight elevator during the summer months, take proper care of the electric elevators, pumps &c., in the building known as 91 Fifth Ave., in the said City of New York," and "to furnish and pay one competent elevator attendant, in uniform, for the passenger elevator, and one elevator attendant for the freight elevator, during the heating season, the hours for elevator service and heat to be in accordance with tenants' leases," and, further, to furnish all the coal and wood and other supplies required for the proper operation and care of the boiler, elevators, and pumps, and to keep them all in thorough order and repair at its own cost and expense, and to attend to all minor repairs of the building. In consideration of such services the owner of the building was to pay to the Urban Company $1,600 per annum. The defendant Oppenheimer, finding this contract in existence, continued it by a verbal agreement by which the Urban Company undertook to manage the machinery and elevators, and to employ the elevator boy and engineer in control thereof. During the night the electricity was shut off, so that the elevator could not be moved; but in the morning the engineer employed by the Urban Company was in the habit of coming into the building about 6 o'clock, looking over the machinery, and turning on the current, so that the elevators could be

moved. It was the duty of the elevator boy who was employed by the Urban Company under its contract with the defendant Oppenheimer to run the elevator. The elevator was moved by a rope passing through the elevator and down the elevator shaft into the cellar, so that, when the electricity was turned on, by pulling this rope the elevator could be made to ascend or descend, as required.

On the morning of the 16th of April, 1904, several employés of Peller Bros. arrived at the building to go to work. There was evidence that one of the two doors closing the entrance to the elevator on the ground floor was open, but that the elevator boy was not there; that several of the employés of Peller Bros. went into the elevator, and stood there, waiting to be taken up to their work; that the plaintiff's intestate, who was also an employé of Peller Bros., came and stood at the opening into the elevator, one foot upon the floor of the elevator and the other on the floor of the building; and that the elevator, for some unexplained reason, started up, carrying the plaintiff's intestate up between the elevator and the wall, causing him an injury which resulted in his death.

The plaintiff has brought this action against both the owner of the building and the Urban Contracting & Heating Company, claiming that they were both guilty of negligence. The evidence is undisputed that the elevator itself was in good order, and it is not claimed that the accident was caused because of defective machinery, or of any other defect in the elevator or the building. After the power had been turned on, any one of those upon the elevator, by pulling this rope, could have caused the elevator to move; but the evidence is undisputed that without a movement of the rope the elevator could not move, as the machinery was so arranged that, if the rope had been in a position to allow the elevator to move when the power was turned on, the sudden current of electricity would have caused a fuse to burn out, which would have prevented the elevator from moving at all. I think that, upon the whole evidence, a finding that the motion of this elevator was caused in any other way than by a movement of the rope in the elevator would be against the weight of evidence.

When these employés of Peller Bros. arrived in the morning, the elevator boy was not present, and, instead of waiting outside of the elevator, where they would have been safe, they took their places in the elevator, waiting there for the boy to come; and the plaintiff's intestate then placed himself partly in the elevator and partly on the floor of the building—in a position of danger in case the elevator should move—and stood there, talking to his associates. The elevator did move, and the injury resulted because the plaintiff's intestate had placed himself in this position of danger. There was certainly no invitation to the plaintiff's intestate, either by Oppenheimer, who was the owner of the building, or by the Urban Contracting & Heating Company, who was operating the elevator, to place himself in this position. In the absence of the elevator boy, these men had no business in the elevator. It stood there empty, without any one in control of it, and was not in a condition for use. Neither of the defendants could have anticipated that persons wish-

ing to use the elevator would stand upon it, and wait there for the boy employed to operate the elevator to come. But whatever may be said about these men who stood in the elevator, certainly one placing himself at the entrance of the elevator, in such a position .that the slightest movement of it would be certain to cause an injury, was not in a position to which he was invited by either of the defendants. If the car had suddenly started as he was walking into the elevator, a different question would be presented. The evidence of the plaintiff's witnesses is clear that the plaintiff's intestate stood in this position, talking to the other men, for some appreciable time before the elevator started. If he had been outside of the elevator, he would have been safe; but placing himself in this position—a position obviously dangerous—was not the act of a prudent person, and an injury that resulted from his thus placing himself in such a position is not one for which the defendants are liable.

As before stated, the machinery was in perfect order. There is no evidence that the elevator was caused to move by the act of any agent or employé of either of the defendants, and there is therefore nothing to justify a verdict of negligence against either of the defendants. The elevator boy at the time had gone down into the cellar, and was preparing for his day's work. The elevator had not been used on this morning. No one had been invited on this morning to use it, and, until the boy whose duty it was to operate the elevator had arrived and taken charge of it, it was not in a condition to be used.

Assuming that the maxim res ipsa loquitur would apply, and that in the absence of some explanation the sudden starting of the elevator would justify a submission of this case to the jury as to whether there was any negligence on the part of those responsible for its management, from uncontradicted evidence it appears that the elevator was in perfect order, and that the accident was not caused by any act of negligence of the defendants. Any presumption, therefore, that would have justified a finding of negligence because of the accident, is rebutted, and there is no ground upon which a finding of negligence can be sustained.

In Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, the duty of the owner of a building to those using an elevator operated and maintained by the owner was discussed, and the conclusion was that the owner of the building owed those using the elevator the duty of using at least reasonable care in seeing that the premises were safe, and that if a person thus using the elevator was injured by an accident which could not ordinarily have occurred, had the elevator machinery been in proper condition and properly operated, the court was justified in permitting the jury to infer negligence from an accident. The judgment in that case having been reversed, there was a new trial, when the defendant's evidence was taken, and it again came before this court on appeal (74 App. Div. 371, 77 N. Y. Supp. 626), and the question presented was whether or not the evidence, as a whole, justified a finding that the defendant was remiss in his duty in exercising the degree of care which the law imposed upon him, namely, ordinary

care for the protection of the plaintiff's intestate; and, after dis-
cussing the evidence, we held that a finding of negligence on the
part of the defendant was not sustained where it appeared that there
was no defect in the machinery, or any indication to the defendant
or his employés that there was any danger in the operation of the
elevator, and that the direction of a verdict for the defendant was
proper; and this judgment was affirmed by the Court of Appeals.
174 N. Y. 505, 66 N. E. 1109.  This, I think, is a decisive authority
against sustaining a verdict for the plaintiff in this case.  Here,
the undisputed evidence is that the machinery was all in perfect
order; that the defendants' employés were engaged in getting ready
to start the elevator in the morning; that before it was ready for
use, and before an employé of the defendants was actually in charge
of it, a tenant in the building walked into the elevator, standing in
a position which was dangerous if there was a movement of it,
without any invitation of the defendants or their employés ex-
press or implied; and that an unexplained movement of the ele-
vator resulted in an accident.  For this the defendants were not lia-
ble.

The case of Ingrafia v. Samuels, 71 App. Div. 14, 75 N. Y. Supp.
718, is not at all in point, for there the accident was caused by the
negligence of the elevatorman, who deliberately left the car before
the others who were passengers upon it, leaving them there unpro-
tected; and it was this act of the elevatorman that was the basis of
the finding of negligence.  In sustaining a verdict in that case, the
court said:

"His negligence, therefore, in thus leaving the car and its occupants before
they had opportunity to safely alight, in view of his knowledge or means of
knowing that such an accident could occur and was to be guarded against, was
a failure to observe that reasonable care which, as stated in the recent case
of Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St.
Rep. 630, is required in the maintenance and operation of an elevator."

In this case there is no evidence that the operation of the car had
commenced, that the plaintiff's intestate or his associates had been
invited to enter the car, or that the agents of the defendants could
have anticipated that the defendant's employés would get upon the
elevator and wait there, rather than to remain in a place of safety
outside of the car.  The mere fact that the door of the elevator
was open was not an invitation for any one to get into the elevator
when no one was in charge of it.

If this view of the case is correct, the plaintiff's intestate was
guilty of contributory negligence, as a matter of law, in placing
himself in this position, with one foot upon the elevator and the
other on the floor of the building, when there was no one in charge
of the elevator, and it was his negligence that caused the injury;
and there is no evidence to show that the defendants, or either of
them, were negligent.

The judgment and order must therefore be reversed, and a new
trial ordered, with costs to the appellants to abide the event.

McLAUGHLIN and LAUGHLIN, JJ., concur.  O'BRIEN, P.
J., and PATTERSON, J., dissent.