CARMELA SGANDURRA, as Administratrix of the Estate of SEBASTIAN SGANDURRA, Deceased, Plaintiff, v. 220 ESTATES, INC., Defendant.

Supreme Court, Trial Term, New York County, June 20, 1945.

*Harry E. Kreindler* for plaintiff.

*Adolph F. Bruenner* and *Joseph L. Roesch* for defendant.

BOTEIN, J. The defendant owned an eight-story loft building in the city of New York, which at the time of the occurrence of the accident giving rise to this action was undergoing extensive repairs necessitated by a fire. The decedent was a plasterer who had worked in the building for several weeks prior to the date of the accident. During the period when it was being repaired, the building was unoccupied by tenants.

There was an elevator in the premises upon which the workmen were carried from floor to floor in the performance of their duties. The system of bells ordinarily employed as a signaling device for the elevator had not functioned since the occurrence of the fire, and there was testimony that it was the practice of the workmen in the building to attract the attention of the operator by shouting to him through the shaft.

On the fifth floor the elevator shaft was permanently enclosed on three sides. A few days before the accident occurred, doors had been installed on the landing side, to replace those damaged by the fire, but glass panels had not been inserted in the upper portions of these doors which were designed to frame such panels.

On the date of the accident the plasterers were working on the fifth floor. One of them called for the elevator operator by thrusting his head through the empty panel space in the doors and shouting. This call was repeated fruitlessly several times. It is claimed that after fifteen minutes the decedent proceeded to the elevator doors, inserted his head a few inches inside the shaft and was struck by the elevator as it descended from the floor above while being operated by the defendant's employee.

A jury rendered a substantial verdict, which the defendant now moves to set aside.

During the course of the trial, and upon this motion, the plaintiff urged that many provisions of the Labor Law, Rules of the Board of Standards and Appeals of the Department of Labor, and the Administrative Code of the City of New York were applicable herein. I ruled during the trial and I still hold that upon the facts in this case only section 200 of the Labor Law has any application, and that otherwise there is no proof of any violation of any provisions as claimed. Section 200 of the Labor Law requires generally that an employer in the equipment, arrangement and operation of places " provide reasonable and adequate protection to the lives, health and safety of all persons employed therein." The defendant excepted to that portion of the charge which related to section 200 on the ground that the Labor Law had no application to the facts herein. If there was evidence of alleged negligence, that issue was submitted properly to the jury under this section, which in this sense is merely declaratory of the common law to the extent that it imposes upon the employer the duty of exercising reasonable care. (*Dittiger* v. *Isal Realty Corp.*, 264 App. Div. 279, 281, revd. on other grounds, 290 N. Y. 492.) Section 200 applies to all places to which the Labor Law has application.

The Labor Law is applicable to a building under the course of construction, alteration or repair (see art. 10).

In the instant case, whether the defendant is charged with violation of section 200 of the Labor Law or of a similar common-law duty, the requirement is the same; the defendant was obligated to maintain a reasonably safe place in which the decedent could work. The elevator was a portion of the premises in which the decedent performed his work. There was proof that the bell system had not functioned for many weeks, that there was din and noise in the building and that it was customary for the workmen to signal for the elevator by going to the shaft and shouting for the operator. Inasmuch as there was no glass in the panels, it is claimed that the workmen fell into the practice of inserting their heads into the shaft to call the operator. A jury might determine, as the one in this case evidently did, that the conditions were such that it was foreseeable that a workman anxious to get on with his work after repeated delays would attempt to secure elevator service more expeditiously by inserting his head in the elevator shaft to call to the operator. These are factors requiring the consideration of the jury upon the issue of the defendant's negligence.

The issue of contributory negligence was likewise submitted to the jury as a question of fact. The plaintiff contends that the defense of contributory negligence is not available to the defendant, upon the assumption that her cause of action is statutory in that it asserts an alleged violation of section 200 of the Labor Law, and that this is therefore a cause of action created by statute in favor of a person within a protected class. (See *Stern* v. *Great Island Corp.*, 250 App. Div. 115; *Pollard* v. *Trivia Building Corp.*, 291 N. Y. 19.) It seems clear that were this such a statutory cause of action, the plaintiff's right to recover would not depend upon any negligence of the defendant but would rest upon a breach of statutory duty, to the injury of the plaintiff, and in such circumstances contributory negligence would not constitute a defense. (*Stern* v. *Great Island Corp., supra.*)

As discussed above, however, section 200 of the Labor Law is merely declaratory of the common law. In this sense it would seem that the statute did not create a cause of action within the rule of the *Stern* v. *Great Island Corp.* case (*supra*) but rather gave statutory recognition to a common-law cause of action.

The defendant, of course, does not complain because the issue of contributory negligence remained in the case, but it does contend that under the facts herein that issue should have been decided in its favor as a matter of law. It has been held that if a person enters an unattended elevator, he is guilty of contributory negligence as a matter of law. (*Kaplan* v. *Lyons Building and Operating Co.*, 61 Misc. 315.) It has also been held that it constitutes contributory negligence as a matter of law to insert a portion of one's person inside an elevator shaft where there are no facts indicating a necessity or an implied invitation to act accordingly. (*Green* v. *Urban Contracting & Heating Co.*, 106 App. Div. 460; *Bromberg* v. *Friend*, 72 App. Div. 633.)

In the Massachusetts case of *Ramsdell* v. *Jordan* (168 Mass. 505, 506) the facts were almost identical with those in the instant case. There was a directed verdict in favor of the defendant at the close of the plaintiff's case, which was affirmed, the court stating: " It is so plainly dangerous for a person to put his head into an elevator well for the purpose of shouting up the shaft for the car to come down, that the verdict for the defendants was rightly ordered." (Citing cases.)

It would appear, however, that the law as enunciated in the Massachusetts decision is not followed in New York. The later New York cases find their roots in *Teich* v. *Seidman's Garage* (188 N. Y. S. 488 [App. Term, 1st Dept.]). In this case the plaintiff, who stored his car on the third floor of the defendant's garage, drove it to the elevator and rang the bell to signal the operator. The elevator door was composed of two parts, the upper raising and the lower moving downwards, and it was operated by pulling a strap or by pressure of the hand. After waiting in vain for fifteen minutes and upon noticing that the upper and lower portions of the door were separated a distance of two and one-half feet, the plaintiff inserted his head through the opening and called out, whereupon the doors closed simultaneously causing his injuries.

In holding that the plaintiff was not guilty of contributory negligence as a matter of law, the court said: " It is argued that, prompted by an unrestrained feeling of impatience, he deliberately, in order to avoid a safe, if more circuitous, course, placed himself in a position of known danger, whereby the doors might be operated at any moment, without notice to him, from below, thereby committing an act of such distinct imprudence that reasonable minds could not draw diverse inferences as to his conduct. While true plaintiff knew from his experience of riding upon the elevator that as far as each floor was

concerned the doors could not be closed, except through some intervening agency pulling the straps or hooks attached thereto, he neither saw any one in the vicinity who could have closed the doors, had any notice whatever that they were about to be shut, nor, as his evidence discloses, did he know or appreciate the fact (if such it was) that upon reaching any given floor the action of the elevator or its operation would automatically close the doors on floors above. Here they had remained in a stationary position for over 15 minutes. His efforts, repeatedly exerted, by means of ringing the bell, to have the elevator brought to his floor, had proved futile. His momentary act in injecting his head through the opening to shout down the shaft, we do not think, under the circumstances shown, can be viewed as one of such evident disregard of ordinary care as to warrant its disposition by the court as a matter of law. Rather, in the best light for the defendant, it presented a reasonable question of fact for the jury to say whether or not his conduct was heedless or savoring of neglect.''

While those who would like the given facts to fit into precedent as snugly as a piston into a cylinder may point out that in the *Teich* case (*supra*) the plaintiff did not place his head inside the elevator shaft, and that he met with his injuries because his head was struck by the doors and not by the elevator, nevertheless the rationale of the opinion indicates a latitude in application which embraces the facts in the instant case.

In *Hanson* v. *McGraw-Hill Co., Inc.* (213 App. Div. 873, affd. 242 N. Y. 515) there was testimony that the plaintiff worked from 5:00 o'clock to midnight for a tenant of the defendant; that one of the elevators in the building was running for the benefit of night workers; that he was proceeding to an upper floor in connection with his work; that he rang the elevator bell once, twice or three times in an endeavor to summon the elevator. He secured no response for fifteen minutes. There was testimony that it was the custom to call the elevator by pounding on the door with a hammer or by calling up or down the elevator shaft by voice. There was proof that the bell had been out of order for a considerable period of time, and also that the elevator doors did not function properly. Apparently these doors were similar to the elevator doors described in the *Teich* opinion (*supra*). The proof indicated that these doors were closed by manipulation of the elevator operator within the shaft. There was testimony indicating that the clutch or spring which held the doors together had been out of order for some months before the accident, so that the doors usually rebounded, leaving an opening between them. It was

claimed that the plaintiff inserted his head between the elevator doors and was injured, although the proof was not very clear as to the manner in which he met with his injuries. There was a sharp issue of fact as to whether the plaintiff had inserted his head into the elevator shaft or only between the doors of the elevator. He received a verdict at the hands of the jury, which the trial justice set aside.

The Appellate Division, Second Department, in reversing the trial court and reinstating the verdict of the jury said, in part: "We are in accord with the reasoning in *Teich* v. *Seidman's Garage* (188 N. Y. Supp. 488). The cases cited by the learned trial justice all relate to accidents where the plaintiff was struck by a descending elevator after he had wholly or partly entered an elevator shaft."

From the last sentence above quoted, it might seem that the court was drawing a distinction between accidents in which a plaintiff had been hit by a descending elevator after wholly or partly entering an elevator shaft and cases wherein a plaintiff sustained his injuries because of the action of the elevator doors. In the Court of Appeals the plaintiff relied upon that distinction. However, although the memorandum of the Court of Appeals, as drawn by the court's reporter, states that the plaintiff was struck by a " descending elevator ", the judgment was nevertheless affirmed without opinion.

The latest case in point is *Zucker* v. *Ephraim Realty Corp.* (243 App. Div. 543). The testimony in that case indicates that the plaintiff was employed as a stock clerk in a building operated by the defendant. On the floor where the plaintiff worked, two large doors, which were always open, gave access to the freight elevator. For one year no bell system had been provided or, if there was one, it was in bad condition and did not function. There was testimony that when the operator was needed, he was called through the shaft by voice. There was a gate in front of the open shaft on the fourth floor. It was the practice of the operator of the elevator to lift this gate when he stopped at the floor and to lower it when leaving. There was testimony that on the date of the accident the plaintiff hauled merchandise to the shaft and called to the operator, and that the operator in turn shouted " Coming! " After a wait of two or three minutes the plaintiff called again and the operator yelled " Coming up! " After two or three minutes it seems that the plaintiff went to the shaft, placed his head over the gate and into the shaftway and called the operator by name, when he was hit by the elevator coming down. The trial court dismissed the complaint, holding that the plaintiff was guilty of con-

tributory negligence as a matter of law, and distinguished *Hanson* v. *McGraw-Hill Co., Inc.,* (213 App. Div. 873, *supra*), on the ground that in the *Zucker* case (*supra*) the plaintiff had inserted his head into the shaftway, whereas there was no such proof in the *Hanson* case (*supra*). The Appellate Division unanimously reversed in the *Zucker* case (*supra*) holding that the question of contributory negligence was one of fact, and citing *Teich* v. *Seidman's Garage* (188 N. Y. S. 488, *supra*) and *Hanson* v. *McGraw-Hill Co., Inc., (supra).*

The tenor of the decisions discussed above would appear to be that the act of inserting a portion of one's body into an elevator shaft, needless and heedless exposure to danger as it may seem, does not in and of itself necessarily constitute contributory negligence as a matter of law. If the invitatory factors surrounding the occurrence may be determinative of the issue of contributory negligence or, in fact, of the defendant's negligence, then those factors are present herein to an extent sufficient to warrant their submission as issues for determination by the jury.

Accordingly, the motion is denied.