FRANK F. KOEHLER, Respondent, *v.* GRACE LINE, INC., et al., Appellants, et al., Defendants.

First Department, December 21, 1954.

*James I. Cuff* of counsel (*Lillian E. Cuff* with him on the brief; *George A. Garvey,* attorney), for appellants.

*Benjamin H. Siff* of counsel (*Hill, Rivkins & Middleton,* attorneys), for respondent.

BOTEIN, J. In this negligence action to recover damages for personal injuries the appealing defendants attack the judgment entered against them upon the grounds that (1) it is unsupported by the evidence and (2) it resulted from errors committed by the trial court in its charge and rulings on certain requests to charge.

Plaintiff was injured when a two-story concrete bulkhead building connecting Pier 57 with Pier 58—the latter 250 feet to the north—collapsed. The two piers and the building were

operated and controlled by defendant Grace Line. All three structures extended out over the North River and rested on wooden piles. The ground floor of the building was level with the piers and was used as a passageway for moving cargo from one pier to the other. It also afforded a place where marine gear and equipment could be kept when not in use. The floors of the piers and the building were of the same material, presenting a continuous and uniform paved surface. Access to the building from Pier 58 was through a 20-foot opening leading into the 250-foot causeway to Pier 57.

On September 28, 1947, a fire occurred on Pier 57 which practically destroyed the pier. Pier 58 was not involved in the fire. The following morning plaintiff, a cargo surveyor and appraiser, was retained by Grace Line and its subsidiary, defendant Huron Stevedoring Corporation, to make a survey and appraisal of any damage that might have been caused to baggage, cargo and stevedoring equipment. Plaintiff went to Pier 58 for the purpose of examining baggage that had been transferred to that pier from Pier 57. He found Pier 58 to be "permeated" with smoke emanating from Pier 57, but saw no evidence of any flames or active fire at Pier 57 or, for that matter, at any other place.

The next day, again at the request of Grace Line, plaintiff went to Pier 58 for the purpose of ascertaining whether conditions permitted the placing of a shipment of coffee on the pier without danger of its becoming contaminated by smoke. He found the pier to be practically free of smoke and that there was no danger of smoke contamination. On this occasion he looked into the bulkhead building and noticed several large holes in the floor of the causeway leading to Pier 57. The piles supporting the floor at these points had burned down to such an extent that the concrete surface had fallen and created the holes. Plaintiff knew that the burnt pilings were responsible for the openings in the floor. There was evidence indicating that at least one of the openings had been made with the use of a chisel.

Later that day plaintiff conferred with officials of defendants Grace Line and Huron Stevedoring, as well as a Mr. Helprin, the surveyor representing the insurance companies which had insured the stevedoring equipment. Arrangements were made for plaintiff and Mr. Helprin to meet at Pier 58 the following morning. Among other things, plaintiff was to make a list of the stevedoring equipment that was on the pier or in the bulkhead building. Pursuant to these arrangements, plaintiff

met Mr. Helprin at Pier 58 on the following morning. As had been the case on his prior two visits, plaintiff experienced no difficulty in entering the pier, which was functioning in the usual manner. Cargo was being discharged from a ship and transported about the pier by tow motors and other vehicles. In general the activities were those normally to be expected on and about a pier.

During the performance of his work for appellants, plaintiff, followed by Mr. Helprin, entered the bulkhead building from the entrance on Pier 58. There were no signs or barricades to indicate that the bulkhead building was unsafe in any way. He proceeded toward an irregular hole in the floor of the bulkhead building which was approximately eight feet in width and ten feet in length. The easterly edge of the opening was " close against " the concrete wall on the street side of the building. The floor between the westerly edge of the opening and the wall on the river side of the building was intact. When plaintiff reached a point about ten feet from the opening he saw two tow motors resting on the burned and charred remains of the wooden pilings which had supported that portion of the floor. He was making a notation of his discovery in a record book when the walls, floor and upper portion of the building suddenly collapsed. Plaintiff was precipitated into the river and sustained the injuries for which damages are sought in this action.

Plaintiff was a business invitee of defendants who had gone to the bulkhead building at their request and for purposes directly connected with their business. As such invitee defendants owed him the duty of providing a reasonably safe place for the performance of the work that he had been retained to do. At the very least, it was incumbent upon defendants to take reasonable precautions with respect to his safety (*Haefeli* v. *Woodrich Eng. Co.*, 255 N. Y. 442). What precautions, if any, had been taken by defendants are not indicated in the record. Suffice it to say, however, that there is sufficient evidence to support a finding that defendants could have learned of the dangerous condition of the buildings by the exercise of reasonable care. Appellants argue that the danger was as apparent to plaintiff as it would have been to them had an inspection of the building been made. Such a finding is not enjoined by the record, and we conclude that it was a jury question whether or not plaintiff was contributorily negligent under the circumstances. The duty to exercise reasonable care with respect to the maintenance and operation of the build-

ing rested on defendants and not on plaintiff, who was primarily concerned with the cargo and stevedoring equipment. Plaintiff was not hired to inspect the physical structure or its supports, only cargo, baggage and equipment.

On the basis of the evidence, therefore, the court correctly charged the jury that defendants could be held accountable for plaintiff's injuries if the jury found that defendants knew or by the exercise of reasonable care could have discovered the dangerous condition of their premises; and had failed either to make the premises reasonably safe or to warn plaintiff as to the dangers and risks involved.

The court also charged correctly with respect to contributory negligence. Although the charge was somewhat generalized and not directed as specifically as it might have been to the controlling aspects of the case, it was nevertheless adequate to enable the jury properly and intelligently to resolve the issues. Had the court submitted the case to the jury at that point, there would be no substantial basis for disturbing the verdict. However, by its rulings on certain requests to charge, the court impaired the significance of its main charge and may well have given the jury the impression that defendants' liability was absolute regardless of considerations of negligence and contributory negligence.

At the conclusion of the main charge, to which no exception was taken by either side, plaintiff's counsel made the following requests: Plaintiff's Attorney: "I ask your Honor to charge the jury that when the defendants employed Mr. Koehler to go to Pier 58 and the bulkhead building, there was an implied assurance there that the premises were safe for him, in which to perform his services, and that he could rely upon that implied assurance." (Defendants' attorney noted his exception.) The court granted the request as framed without instructing the jury as to the effect of the assurance and the consideration that was to be given to it.

There was no occasion for this request, as the duty of defendants had been fully and properly stated in the charge. Last-minute, scattergun requests to charge on subject matter that has already been covered adequately in the main charge should be discouraged. A good, carefully prepared charge has major and minor values, and is most meaningful when the sense of the whole is not disturbed, possibly distorted, by needless repetition of isolated fragments. Even when the request embodies a correct exposition of the law, there is danger of inappropriate and dangerously timed emphasis on only one

aspect of the issues. The danger is heightened when, as here, the request was incorrect because it was incomplete as a statement of the law.

Plaintiff's request operated to cancel out the conditions and considerations which the court had advised the jury should govern their determination of defendants' responsibility. The request made it appear that defendants were the insurers of the safety of the premises without any question of negligence entering into consideration, and that plaintiff could rely upon the assurance of safety and was relieved from any responsibility of care on his own part. We think that, at the least, the court should not have charged so baldly and absolutely, without qualification or amplification, with respect to the relative duties of the parties grounded in the applicable principles of negligence law.

In the absence of such instructions, the charge was incomplete in that it did not apprise the jury as to whether any care was to be exercised by plaintiff in the light of the assurance and his reliance thereon. An invitation to enter a dangerous place extended by one in control who knows or should know whether it can be done safely carries with it, to be sure, an implied assurance of the invitee's safety (*Christensen* v. *Hannon,* 230 N. Y. 205, and cases cited therein; *McHollan* v. *Farcote Realty Co.,* 257 App. Div. 864). Such an assurance, however, does not justify the abandonment of all care on the part of an invitee. It merely excuses him from exercising the degree of care that might otherwise be required. The extent to which the invitee's conduct is to be governed by the assurance is always a question to be determined by the jury in the light of the particular circumstances involved.

The court therefore should not have granted plaintiff's request to charge without instructing the jury as to the predicate of defendants' liability within the negligence frame of the case, and as to the relationship between any implied assurance and the degree of care plaintiff was required to exercise under the circumstances. It could be argued that in view of the proper charge which preceded this instruction the jury did not attach to it the rigid legal significance that it yields upon close analysis. But this error was compounded by what followed immediately after the granting of the foregoing request to charge; and which in our opinion created a very real contingency that the jury left the box with the understanding that defendants owed an absolute duty to plaintiff.

Defendants' attorney, in an evident effort to repair the ravages of so unqualified an instruction, asked the court to charge " that the duty or care owed by the defendants must be weighed in the light of the conditions prevailing, having in mind that a fire had occurred on the 28th of September and had continued thereafter." This request was refused " except as charged ". While it included a controversial issue as to whether in fact the fire had continued after September 28th and need not have been charged in the form proposed, nevertheless it strongly suggested what was pertinent and called for as complementary to the granting of plaintiff's request which had immediately preceded it; namely, that the duty of care owed by defendants must be weighed in the light of the conditions prevailing.

Persisting in his endeavors to confine the application of the unqualified instruction, defendants' counsel then made the following request: " I ask the Court to charge that the defendants were not insurers of the plaintiff's safety." Although this was a routine request that has been granted time out of mind by judges, plaintiff's counsel objected most strongly. Again the court refused to charge as requested.

The request was eminently proper and should have been granted (*Maue* v. *Erie R. R. Co.*, 198 N. Y. 221, 227; *Devine* v. *Alphons Custodis Chimney Constr. Co.*, 198 N. Y. 592, 593; *Conroy* v. *Saratoga Springs Auth.*, 259 App. Div. 365, 367, affd. 284 N. Y. 723). Its refusal, coming almost immediately after the granting of plaintiff's request relating to the implied assurance, could well have left the jury with the erroneous impression that by their implied " assurance " defendants had in fact " insured " plaintiff's safety. It is reasonably conceivable that the jury's verdict may have resulted from a misconception created by this coupling of words with related meanings.

The judgment appealed from should be reversed and a new trial granted, with costs to appellants to abide the event.

CALLAHAN, J. (concurring). The plaintiff, a man performing salvage work, entered a bulkhead building contiguous to a dock, which had been consumed by fire a day or two before. Plaintiff was engaged to make an examination of personal property contained in the bulkhead building. The building collapsed, apparently due to the fact that the fire had progressed underground along the underpinning of the bulkhead. It appears to me that the only negligence attributable to defendant, the owner of the building, under such circumstances would

be the failure to examine the structure after the fire to see whether it had become dangerous to enter. When a fire has occurred, we know by experience that the fire department usually warns against unsafe structures, where the danger is evident. No such warning appears to have been given here. To hold defendant liable to plaintiff (who knew as much, if not more than defendant's officers about the effects of fire), is, in my opinion, warranted only on the narrow basis that the failure to examine the bulkhead building structurally and to warn in the few hours between the fire and the plaintiff's entry into the premises established lack of reasonable care. In my view it was improper to submit a case like this on a general broad issue of negligence.

While I agree with the reasons assigned for reversal by the majority, I would add that upon the new trial the charge should include concrete instructions, as above indicated, with respect to the precise issue of negligence involved.

PECK, P. J., concurs with BOTEIN, J.; CALLAHAN, J., concurs in opinion; COHN and BREITEL, JJ., dissent and vote to affirm in the following memorandum: We agree generally with the expression of views in the majority opinion. However, although we believe the granting by the trial court of plaintiff's request, referred to in the prevailing opinion, made at the conclusion of the trial, and its refusal to grant the two following requests made by defendants was error, nevertheless we are of the view that under the circumstances of this case such error was harmless and was not prejudicial.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event.