Hofstadter, J. P.
(dissenting). I dissent.
My colleagues hold that a wide-open concrete floor on the eighth story of a building under construction was as a matter of law, not dangerous to plaintiff — a workman required to walk back and forth on the floor, stacking angle irons — despite the fact that imbedded at intervals throughout the concrete there were temporary metal sleeves two and one-half inches in diameter and protruding three or four inches from the floor (to permit pipes eventually to pass through the floor). My brethren also find plaintiff — 56 years old at the time of the accident — guilty of contributory negligence as a matter of law, because he knew of the existence of the sleeves and had passed the area of the accident a number of times before he tripped over one of the projecting sleeves. I cannot agree.
The case was tried by Judge and jury. Appellant chose to rest at the close of plaintiff’s case. The jury found the condition a hazard and plaintiff free from contributing fault. The Trial Judge, in a considered written opinion following the verdict, declared the jury justified in these findings. He concluded that questions of fact were presented, that it was fairly submitted to the jury, and that he would not be warranted in disturbing the verdict. We too, have no warrant to disturb it; plaintiff’s testimony was uncontradicted and inferences of fact only were in issue.
Appellant was general contractor for the construction of a housing project at 99th Street and Second Avenue in Manhattan. The steel frame was up and the concrete floors had been poured; hut erection of the outside walls, subdivision into 10 or 12 apartments on each floor and installation of pipes had not been *638 reached. Plaintiff and another, working for a subcontractor on the eighth floor, were removing angle irons weighing two or three hundred pounds from a crane and then stacking them one at a time elsewhere on this very extensive open area. On one of his trips back to the point of delivery, plaintiff tripped over one of the projecting metal sleeves.
The sleeves had been inserted in the wooden forms into which the concrete was poured, to provide openings through the floor for the pipes to come. They were temporary — - eventually to be removed with hammer and chisel. They were circular, two and one-half inches in diameter — the size of a telephone mouthpiece. They protruded three or four inches from the floor. They dotted the open floor wherever a pipe or riser was anticipated to pass through.
Section 200 of the Labor Law commands that places of work shall be “so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein.” Section 23-3.10 of the Industrial Code directs that places of work shall be maintained “ free from obstructions or defects which may constitute a tripping, cutting or falling hazard.” The jury found, that the projecting sleeves here constituted a tripping hazard — particularly in the total absence of guards or other precautionary procedures. Were protruding beer cans of similar diameter vertically imbedded in the concrete, the answer would be without doubt. From the point of view of safety the distinction is without a difference.
In default of proof that the sleeves were standard and safe and sound practice, fault could properly be inferred by the triers of the facts (Sgandurra v. 220 Estates, 185 Misc. 283, affd, 270 App. Div. 834; Semanchuck v. Fifth Ave. and 37th St. Corp., 264 App. Div. 329, affd. on this issue 290 N. Y. 412; Schumer v. Caplin, 241 N. Y. 346; Earl v. Crouch, 61 Hun 624, affd. 131 N. Y. 613; Vallina v. Wright & Kremers, 7 A D 2d 101). Yet, on the pitifully meager foundation of plaintiff’s responses on cross-examination:
“ Q. And that is the way all these buildings are that you have always worked in, is that correct? A. Well, it all depends on the locations.
“ Q. I say at a certain stage all of those buildings built of concrete and steel look like that, don’t they? A. Yes,”
The majority would hold as a matter of law that the practice followed was sound, standard, safe.
And further that as a matter of law, plaintiff’s knowledge of the condition rendered him chargeable with contributory *639 negligence. This holding, too, not only offends against a sense of innate justice but is contrary to precedent. It is a grave retrogression in decisional law.
As far back as 1886, the law had been established that “ it would be error for a trial court to grant a nonsuit if by any allowable deduction from the facts proved a cause of action might be sustained by the plaintiff, and when such ruling has been upheld by reason of the contributroy negligence of the person injured, it appeared that such negligence was conclusively established by evidence which left nothing either of inference or of fact in doubt or to be settled by a jury.” (Greany v. Long Island R. R. Co., 101 N. Y. 419, 423.)
In Kaplan v. 48th Ave. Corp. (267 App. Div. 272) plaintiff conceded that he knew that the plank which caused his injury ‘ ‘ was not a safe construction or a proper method of covering the floor-way” when he walked on it. The court nevertheless reversed a dismissal of the complaint based on the ground that plaintiff was guilty of contributory negligence as a matter of law, saying: 1 ‘ Knowledge of the existence of a defect does not necessarily establish contributory negligence. (Leshinsky v. Cohen, 262 App. Div. 775; Bailey v. Wagner, Whirler & Derrick Corp., 266 App. Div. 875.) One placed in the dilemma of abandoning the reasonable course of his work or assuming a risk will not be charged with contributory negligence as a matter of law if he adopts the latter alternative. * * * Undoubtedly, he knew that a risk was entailed, the assumption of which, under all the circumstances, presented a question of fact as to contributory negligence ” (p. 274). (See, also, Palmer v. Dearing, 93 N. Y. 7; Dollard v. Roberts, 130 N. Y. 269; Conway v. Naylor, 222 N. Y. 437; Nelson v. Nygren, 259 N. Y. 71; Koehler v. Grace Line, 285 App. Div. 154.)
“ It is only when there is no dispute upon the facts and only one conclusion can be drawn therefrom that it may be decided as a question of law.” (Nelson v. Nygren, supra, p. 76.) At bar, the jury might reasonably have concluded that plaintiff was not guilty of negligence in unknowingly walking into the offending sleeve, far below his eye level, while his attention was diverted. It was not his duty to keep his mind invariably fixed upon its existence. His omission to exercise incessant vigilance for its lurking danger does not deprive him of right of recovery. So to hold is a wholly unrealistic view. What was plaintiff to do — abandon the job? Certainly we cannot say as a matter of law that that is what a reasonable man would do. The jury decided in point of fact that that is not to be expected of a reasonably prudent man. *640 Contributory negligence like ‘ ‘ negligence is of a negative character * * # merely the failure to conform to the standard of a normal man ” in Professor Burdick’s phrase (Law of Torts [4th ed.], § 445, p. 509). It is a relative term, “ and its application depends on the situation of the parties, and the degree of care and vigilance which the circumstances reasonably impose” (3 Cooley, Torts [4th ed.], § 456, p. 264) — obviously requiring the exercise of human judgment and for the jury, unless reasonable men could not disagree about the reasonableness of the conduct.
Dean Pound tells us (5 Jurisprudence, pp. 323-324) that the rule of exoneration for contributory negligence was predicated on the “good will” theory of liability — if plaintiff was also guilty of moral fault, he could not complain that defendant was blameworthy. “ But, as Holmes has shown, negligence does not necessarily involve moral obliquity. * * * Moreover, there is nothing in the nature of things to require that in case of concurrent negligence the whole loss be thrown upon one of the parties exclusively.”
The dynamics of the law require constant review to correct or prevent error — and deterioration. It may be too late to expect revision of the concept of liability for fault — with its “increasingly subtle refinements (and a) semantic morass of fine gradations ”. But we can cease and desist from compounding its inequity in practice by formulating a rule of apportionment of fault to replace the inflexibility and unfairness of the prevailing one of contributory negligence. This has resulted in subterfuge to avoid its harsh effect — in subversion of existing law. We should freely allow it to arrive at the front entrance to obviate its intrusion at the back door. (See Report on the Comparative Negligence Rule, Committee on Law Reform, Assn, of The Bar of City of N. Y., Jan. 6, 1953.)
As Judge Breitel remarked some years ago the rule of contributory negligence has no more relevance today than the Rule in Shelley’s Case. It stems from economic roots upon which were engrafted legal concepts, not otherwise indigenous. Juridically speaking it is of doubtful legitimacy — reinforced by expedience. It was spawned by the Industrial Revolution 150 years ago (Butterfield v. Forrester, 11 East 60 [1809]). Though pregnant with inequity, its crass pragmatism was adopted, definitively, by the Court of Appeals a century ago. If plaintiff’s “ own negligence or unskillfulness in any way conduced to bring about the injury complained of, he could not recover, whatever might have been the negligence of the defendant. The law will not in such a case attempt nicely to adjust *641 the degree of blame to be assigned to the respective parties; and will not recognize any act as an injury to either, which they mutually contributed to produce.” (Munger v. Tonawanda R. R. Co., 4 N. Y. 349, 358-359.)
The nicety of this pronouncement does not render it less intrinsically foreign to our sense of “fair play”. And its guise of simplicity and color of practicality do not detract from its arrant expedience. It should be dissolved in equity — and reformed by reality!
But, until the substantive rules are amended, judicial review "will find its safest guide in humility and self-restraint! For, it is rare that the evidence of right clamors so loudly for recognition as to preclude every other solution. Competing answers to the questions posed by the record require what Judge Jerome Fraüstk termed “fact skepticism”; perhaps self-skepticism would do as well! Trial and appellate judges should be circumspect to hold conduct fault or faultless as a matter of law. They should be most loath to multiply exercise of power in substituting their judgment for that of juries.
In the so-called “ rat-bite case ” (Finley v. 102-106 West 143rd St. Realty Corp., 9 Misc 2d 367) I raised dissentient voice, in vain — -in reiterated protest against doing so. Correcting error does not mean choosing, among several possible results, one not chosen by the jury. Where the jury’s verdict has basis, it may not be upset. The function of an appellate court is to correct and prevent error — not to retry the case. The record is not a deposition and an appeal is not a trial de novo (Matter of Spang, 197 App. Div. 310, 314). In deciding who is right and who is wrong, a jury’s judgment, the voice of the community, is as good as, and often apt to be better than that of the judge (Rice v. Cummings Constr. Co., 169 App. Div. 832, 837, affd. 220 N. Y. 564; Davis v. Long Island R. R. Co., 301 N. Y. 450; Wellisch v. John Hancock Mut. Life Ins. Co., 293 N. Y. 178).
We have been frequently admonished that trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision (N. Y. Const., art. 1, § 2) “shall remain inviolate forever ” (Ferrara v. Galluchio, 5 N Y 2d 16; Imbrey v. Prudential Ins. Co., 286 N. Y. 434; Naeris v. New York Tel. Co., 6 A D 2d 196; McGurty v. Delaware, L. & W. R. R. Co., 172 App. Div. 46). The tendency to substitute for that of the jury an appellate court’s sense of what is normal or unexpected — of what is careful or careless — of what constitutes fault or freedom from fault• — -is to invade the province of the jury.
‘ ‘ Unless it can see that no reasonable man would solve the litigation in the way the jury has chosen to do ” the court may *642 not interfere (Rapant v. Ogsbury, 279 App. Div. 298, 299), “ It was for the jury to ascertain what was negligence and whether it was proved ” (Tapley v. Ross Theatre Corp., 275 N. Y. 144, 149).
Neither in reason nor justice nor even in precedent are we warranted in disturbing the plaintiff’s recovery here. It should be affirmed.
Concur — Hecht and Aurelio, JJ.; Hofstadter, J. P., dissents in opinion.
Judgment reversed, etc.