EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Respondent, *v.* DI CESARE & MONACO CONCRETE CONSTRUCTION CORPORATION et al., Appellants.

First Department, December 15, 1959.

*Edward Ash* of counsel (*Alexander, Ash & Schwartz,* attorneys), for Di Cesare & Monaco Concrete Construction Corporation, appellant.

*Raymond C. Green* of counsel (*Harry Schechter* and *Harold Klein* with him on the brief; *Charles G. Tierney,* attorney), for Edward G. McDonnell Rigging Co., Inc., appellant.

*Edmund F. Lamb* of counsel (*Purdy, Lamb & Catoggio,* attorneys), for respondent.

BOTEIN, P. J. This case again presents the question of the duty owed by the general contractor in construction jobs to provide a safe place to work to the employees of subcontractors on the premises.

Reliable Construction Corporation, plaintiff's assured, was general contractor for the erection of a one-story supermarket. The concrete work was subcontracted to defendant Di Cesare & Monaco Concrete Construction Corporation, and the erection of the steel framework to defendant Edward G. McDonnell Rigging Co., Inc.

Di Cesare & Monaco contracted to cast the concrete footings upon which the steel framework was to be erected. It performed its job by pouring ready-mixed concrete into holes dug two and one-half feet deep into the earth and almost four feet square

in dimension. Before the concrete hardened, it was leveled off by running a board or a shovel across the top; but there was testimony to the effect that some of these footings were not completely leveled and were somewhat convex in shape, with rounded edges.

Although steel columns were to be set upon the concrete footings, no anchor bolts were embedded in the concrete. Anchor bolts are devices set into the poured concrete before it hardens, and are designed to secure steel framework to the concrete foundations. The steel columns are bolted to the protruding threaded ends of the embedded anchor bolts so as to hold the steelwork fast. The Di Cesare foreman testified that anchor bolts were omitted at the express direction of the general contractor's superintendent. It is not uncommon, however, to erect steel columns upon concrete footings without anchor bolts, provided wooden shoring is furnished to keep the columns secure during the course of construction.

Some three weeks after the concrete footings and foundation walls had been completed, and after Di Cesare & Monaco, the concrete subcontractor, had departed from the site, McDonnell, the steel subcontractor, appeared on the job. McDonnell was to erect lolly columns — cylindrical steel supporting pillars with a flat base plate at either end. These were to stand perpendicular to the concrete footings. The lolly columns were raised into position by a crane, the base plate set squarely on the footings, and horizontal steel beams were then bolted to the tops of the columns. Despite the absence of anchor bolts to secure the lolly columns to the footings, no wooden shoring was provided to brace the columns and keep them from moving or slipping.

Driscoll, the McDonnell employee whose job it was to bolt the framework together, was standing atop a horizontal beam when one of the lolly columns on which it rested shifted on its concrete footing and he was pitched into the basement, sustaining personal injuries.

Driscoll sued the general contractor, Reliable, for negligence in the design and erection of the structure, alleging that Reliable had failed to provide a safe place to work, and was responsible for failing properly to anchor or secure the upright columns. During the course of the trial the action was settled when plaintiff, Reliable's liability insurer, agreed to pay Driscoll the sum of $35,000. As subrogee, plaintiff then brought suit against Di Cesare & Monaco and against McDonnell, the subcontractors, to obtain indemnity, alleging that the injuries were caused by the primary and active negligence of the subcontractors who had charge of constructing the concrete footings and erecting

the steel columns. Defendant subcontractors contended that Reliable had not been liable to Driscoll in the first instance, or was at least an active joint tort-feasor, and therefore any payments it had made were voluntary and not recoverable from defendants. Trial was had, and a verdict in favor of plaintiff and against defendants was returned by the jury. Both defendants appeal.

The right to indemnity from the defendant subcontractors can be sustained only if it can be shown that the general contractor had breached a nondelegable duty owing to the injured employee; and that while held answerable by law to the injured employee, the negligence of the general contractor was passive and the injury was solely the result of the active negligence of the subcontractors.

If, although not liable to the injured employee on this narrow basis, plaintiff nevertheless chose to make a voluntary settlement, whatever damages that flowed from such a settlement are not to be attributed to the fault of the subcontractors; and plaintiff could not call upon them for reimbursement (*Dunn* v. *Uvalde Asphalt Paving Co.,* 175 N. Y. 214; *Royal Ind. Co.* v. *American Cas. Co.,* 5 Misc 2d 533, 536; 42 C. J. S., Indemnity, § 25). If Reliable was in fact liable to Driscoll, but its acts of commission or omission were such that it would be deemed guilty of active negligence either alone or with the concurrent active negligence of others, there would still be no basis for indemnity (*Harrington* v. *615 West Corp.,* 2 N Y 2d 476; *McFall* v. *Compagnie Maritime Belge,* 304 N. Y. 314; *Bernardo* v. *Fordham Hoisting Equip. Co.,* 6 A D 2d 619, affd. 6 N Y 2d 733; *Balch* v. *Richby Realty Corp.,* 4 A D 2d 864, affd. 4 N Y 2d 1006).

It is plaintiff's contention that because the concrete footings were not level and smooth, its assured had failed in its nondelegable duty to provide a safe place for the work of erecting steel columns; but it charges that the defendants, who actually poured the footings and erected the steel, had created the danger and were the sole parties actively negligent.

The duty of providing a safe place to work is a twofold duty — to make the premises safe and to keep them safe (*Zucchelli* v. *City Constr. Co.,* 4 N Y 2d 52, 56). The premises are made safe by the discovery of dangers ascertainable through reasonable diligence and remedying them or warning against them. They are kept safe by forbearance from creating new conditions of danger. Such duties are not absolutes, but are governed by the generally applicable standards of the prudent man, the foreseeability of harm, and the rule of reason.

The duty to furnish a safe place to work was a common-law duty (*Coughtry* v. *Globe Woolen Co.,* 56 N. Y. 124) which has now been codified by section 200 of the Labor Law (*Olsommer* v. *Walker & Sons,* 4 A D 2d 424, 432, affd. 4 N Y 2d 793; *Sgandurra* v. *220 Estates,* 185 Misc. 283, affd. 270 App. Div. 834; *Dittiger* v. *Isal Realty Corp.,* 264 App. Div. 279, 281, revd. on other grounds 290 N. Y. 492). That section requires all places of work to be " so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein ". The duty runs to all persons employed on the premises without regard to whether they are employees of the party in control or possession.

Workmen coming onto the premises to perform construction or repair work are, in effect, invitees, no matter whose employees they may be, and the duty owed them is generally analogous to that owed to any business invitee (*Haefeli* v. *Woodrich Eng. Co.,* 255 N. Y. 442, 448; *Koehler* v. *Grace Line,* 285 App. Div. 154; *Wohlfron* v. *Brooklyn Edison Co.,* 238 App. Div. 463, affd. 263 N. Y. 547). The general contractor owes them no obligation of protection against the negligence of their own employers, but owes " only the duty of making safe by reasonable care the places of work provided for by him and the ways and approaches " (*Gambella* v. *Johnson & Sons,* 285 App. Div. 580, 582).

Unless the general contractor assumes responsibility directly for supervising the method of work or giving express directions or assurances of safety (*Broderick* v. *Cauldwell-Wingate Co.,* 301 N. Y. 182; *Polito* v. *Irvmar Realty Corp.,* 7 A D 2d 414; *Mendes* v. *Caristo Constr. Corp.,* 5 A D 2d 268, affd. 6 N Y 2d 729), he has no responsibility for the manner in which operations are carried out by the subcontractor's employees. Thus, he is not responsible for the defective machinery and equipment of a subcontractor nor for the methods employed by the subcontractor (*Iacono* v. *Frank & Frank Contr. Co.,* 259 N. Y. 377). The work being done by the subcontractor is considered " work in progress " and dangerous conditions resulting from such work may change what has hitherto been the " safe place to work " upon which the workmen were originally invited to enter (*Zucchelli* v. *City Constr. Co.,* 4 N Y 2d 52, *supra; Hess* v. *Bernheimer & Schwartz Brewing Co.,* 219 N. Y. 415; *Italiano* v. *Jeffrey Gardens Apts.,* 3 A D 2d 677, affd. 3 N Y 2d 977). During the course of construction dangerous conditions are created and corrected with great frequency. The duty to supply a safe place to work does not extend to the situation " where the

prosecution of the work itself makes the place and creates the danger '' (*Mullin* v. *Genesee County Elec. Light, Power & Gas Co.*, 202 N. Y. 275, 279).

In the *Mullin* case, a telephone lineman was injured when the pole on which he was stringing wires fell. The pole had been sunk by the crew of which the plaintiff was a part. The court held that even though the pole had already been set in place when plaintiff climbed it to string the wires, the accident happened when his crew was in the '' process of creating the very place in which the plaintiff met with his injury '' (p. 280). See, also, *Citrone* v. *O'Rourke Eng. Constr. Co.* (188 N. Y. 339).

In the *Zucchelli* case (*supra*) a workman was injured when a floor from which some of the concrete subcontractor's employees had removed the bracing collapsed while fellow employees were pouring concrete upon it. The Court of Appeals held that the general contractor would not be liable to the injured employees of the subcontractor since the floor on which they were working was in the course of construction, and the general contractor's duty to make and keep the premises safe did not extend to the very work on which the subcontractor and its employees were engaged. In *Hooey* v. *Airport Constr. Co.* (253 N. Y. 486) the general contractor was held responsible when a wall in the process of construction collapsed. There, however, the general contractor was held liable because on the facts in that case it was held, '' Escape from responsibility through the delegation of duty to another is a defense to be proved, not a privilege presumed.'' (p. 490); and the general contractor had not proven such a delegation of duty as would establish that it had assumed the responsibility for shoring up the wall.

In the case under review the concrete footings had been provided by one subcontractor and had been completed before plaintiff and his fellow steelworkers came onto the premises. It was contemplated that the footings would be integrated with the steelwork. The lapse of time and the fact that a claimed defective instrumentality was furnished by a different subcontractor did not transform the footings into a place to work under the control and supervision of the general contractor nor do they distinguish this case from the *Mullin* and *Zucchelli* cases (*supra*). The footings, although completed, were to be worked upon and added to by the steel subcontractor — an integral part of the construction work in progress. As is the case when subcontractors are called upon to repair defective conditions (cf. *Kowalsky* v. *Conreco Co.*, 264 N. Y. 125), the steelworkers were provided not with a place to work but with a thing to work upon.

Here there was nothing wrong with the ways or approaches to the premises. The injured employee was not the victim of any hidden traps or unguarded openings. He was able to perform everything preliminary to the work itself without let or hindrance. If, as claimed, the condition of the concrete footings presented dangers in the erection of the steelwork, such dangers were perfectly apparent to an experienced steelworker who could readily observe that there were no anchor bolts, that the footings presented an uneven surface, and that no shoring had been provided to keep the columns in place. The concrete footings were not dangerous when the steelworkers came on the premises. They became dangerous only through the manner of their use. The condition of the footings would have presented no danger had the steel subcontractor made appropriate provision for shoring the vertical columns — a common and acceptable alternative. The method pursued was one over which the general contractor exercised no supervision or control, and under such circumstances it has no liability for defects in the method of operation pursued (*Italiano* v. *Jeffrey Garden Apts.*, 3 A D 2d 677, affd. 3 N Y 2d 977, *supra*).

If, on the other hand, it could be said that the negligence lay in a defective over-all plan which the subcontractors were merely carrying out at the behest of the general contractor, the general contractor would necessarily be considered a joint tort-feasor, and would not be entitled to indemnity.

The general contractor either had no liability at all to the injured workman, or must be deemed to have been actively negligent. In neither event may it obtain reimbursement for the moneys paid in settlement.

After retiring, the jury sent a note to the Trial Judge containing several requests for information. The Judge, with the consent of counsel, dictated answers and had the stenographer repair to the jury room and read them to the jurors. We deem it necessary to note our disapproval of this practice. Proper procedure would dictate that the instructions be given the jury in open court.

The judgment in favor of the plaintiff should therefore be reversed, on the law and the facts, with costs to appellants, and the complaint dismissed.

BREITEL, RABIN, McNALLY and STEVENS, JJ., concur.

Judgment unanimously reversed, on the law and on the facts, with costs to appellants, and the complaint dismissed.