Irving A. SCHWARTZ, as executor of the Estate of Anthony Santomassino, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

Theodore STAY, Andrew Stay, Donald Stay and Kenneth Stay, individually and as partners d/b/a Theodore Stay & Sons, Third-Party Defendants.

Civ. No. 6316.

United States District Court
N. D. New York.

Aug. 8, 1962.

Irving A. Schwartz, Utica, N. Y., for plaintiff; John E. Hunt, Lawrence J. Goldbas, Utica, N. Y., of counsel.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., for defendant and third-party plaintiff; Frank Dziduch, Asst. U. S. Atty., of counsel.

Mackenzie, Smith, Lewis, Michell, & Hughes, Syracuse, N. Y., for third-party defendant; George Sullivan, Syracuse, N. Y., of counsel.

BRENNAN, District Judge.

The complaint in this action, brought under the provisions of the Federal Tort Claims Act, seeks money damages based upon two claims or causes of action. The first claim was brought under the provisions of Section 130 of the Decedent Estate Law of the State of New York, McKinney's Consol. Laws, c. 13 and may be referred to as a death action or action to recover damages on account of personal injuries resulting in death. The second claim seeks money damages

under the provisions of Section 119, Decedent Estate Law, and may be generally referred to as a cause of action or claim to recover for the conscious pain and suffering of the decedent. The defendant and third-party plaintiff seeks to recover over against the third-party defendant the amount of the money judgment or judgments which may be awarded to the plaintiff and against the defendant. The action is based, was tried, and will be decided upon the theory of negligence.

Anthony Santomassino was a mature man, employed by the third-party defendants Theodore Stay and Sons, hereinafter referred to as "Stay". In 1955 and 1956, Stay had contracted with the United States Government to apply a fireproof paint to portions of the interior of certain warehouses located at the Griffiss Air Force Base, Rome, New York. The decedent was employed by Stay in the performance of said contract when on April 26, 1956, he suffered personal injuries by reason of falling from the location where he was working to the floor of the warehouse. Santomassino died on January 18, 1958, the plaintiff contending that his death was the result of the accident of April 26, 1956 and was caused through the negligence of the defendant. There is little factual dispute as to the circumstances and happening of the accident itself. It became apparent however in the course of the trial that the question of liability would be seriously disputed and it was agreed that this court should first consider that question thereby saving the time and expense of producing medical testimony which would necessarily cover a period of approximately twenty-one months. Since it has been determined that plaintiff has not established liability on the part of the defendant, it would seem proper to make and enter a formal decision at this time. The facts gathered from the substantially undisputed testimony are set forth in some detail below.

In the latter part of 1955, Stay, as a general contractor, entered upon the performance of its contract, referred to above, with the defendant. The particular warehouse, in which the accident occurred, was similar to others, included within the contract. It was large in size, being about five hundred feet wide and several thousand feet in length. The principal item of work required by the painting contract consisted in painting the overhead ceiling and beams with a certain type of paint. The interior ceiling of the warehouse is about twenty feet from the floor and the work was accomplished with the use of scaffolding, the details of which are unnecessary here. The particular warehouse involved, known as T6, covered a large area divided into five compartments or bays. During the pertinent times, the space in four of said bays was occupied by bales of crude rubber, piled in stacks, which were shaped as a pyramid, the top being much narrower than the bottom. These stacks were generally about eleven feet in height although some of them may have extended to a height of fourteen feet. The stacks were made up of a number of bales of crude rubber. They were irregular in size, weighing generally from two-hundred and twenty-five to two-hundred and fifty pounds. The most accurate description indicated that each bale was about fourteen inches in height; eighteen to twenty inches wide and two and one-half feet long. It is plain however that they were not uniform in size or weight and that their contour was irregular so that they would not always rest evenly or solidly when piled one upon another or against one another. It is the plaintiff's claim that a condition of unstability existed in the stacks which was the cause of the accident and damages sustained.

The weight of the evidence indicates that the particular stack upon which the decedent was working at the time of the accident was received at Rome and was piled or stacked in 1949. It was located in warehouse T6 and was one of seventy-five stacks within Bay A. This stack and others, received at about that time, were made up of a total of

some one-hundred fifty to one-hundred seventy-five bales. The piling was accomplished in layers, the bottom layer occupying a certain designated area. The second and each succeeding layer was narrower on all sides, having an irregular offset, as to the lower layer of twelves inches or less, so that the completed stack narrowed to the extent that only about ten bales constituted the top layer and the offsets or ledges appeared on all four sides of the completed stack, giving a "step fashion-like" appearance.

In the course of the performance of the painting contract, paint was allowed to drip or fall from the ceiling upon the stacks of rubber referred to above. This condition existed in at least two warehouses, including warehouse T6 with which we are directly concerned, and was reported to the contracting officer at the Air Base. No question appears to be raised but that same was the result of the negligent performance of the painting contract. A conference was held on April 9, 1956, attended by representatives and inspectors of the Government and a member of the general contracting firm and its superintendent. The details of the conference are not clear but it is evident that the Government required that the paint be removed from the bales of stacked rubber.

As a result of the conference, the general contractor provided step-ladders, hand scrapers and wire brushes for the use of its employees in removing the objectionable paint and the work of removal started and was carried on under the supervision of the contractor's superintendent and in the presence of Government inspectors. Although considerable evidence was given as to directions relative to the removal of the paint from the tops of the stacks of rubber, it is unnecessary to discuss same since the accident occurred while the decedent was working upon the side of a particular stack rather than on the top thereof. It is further evident that the contractor's employees were first instructed to remove the paint from the sides of the stacks rather than from the top. The work of cleaning the rubber began by leaning ladders against the sides of the stacks. This was in accordance with the instructions of the painting superintendent. It was however left to the individual employee as to whether he used a ladder in scraping the paint from the sides of the stacks or whether he climbed thereon, using the offsets as a step upon which his feet rested.

On April 26, 1956, Santomassino was engaged in removing the paint from the side of a stack of rubber in warehouse T6. A scraper and a wire brush were the tools used in his work. The painting superintendent was standing within six or eight feet from the workman and observed that he was standing upon the third or fourth layer of rubber when "the rubber under his feet to the right broke loose and the rubber came down in the aisle". Santomassino was precipitated to the floor of the warehouse and received personal injuries, which plaintiff claims eventually resulted in his death. Additional facts, which bear upon the contention of the parties, will be briefly referred to.

That the stacks of rubber, piled as they were, lacked the stability necessary to permit the worker to climb and perform the required type of work thereon is an evident fact. The particular stack of rubber involved was placed in position prior to a manual or directive issued by the General Service Administration as to the method to be used in piling crude rubber. This method consisted principally of placing a wooden rack or frame between every second layer or rubber bales and preparing the surface thereof so that it would afford a level contour or surface for the piling of additional bales. It also appears that occasionally an individual bale of rubber would be found in the aisle, having fallen from its place upon the stack during the night. The contractor or his superintendent had been advised during the process of the painting contract that the stacks of rubber were dangerous to the safety of its employees should they climb upon or pass over the tops of the stacks.

# 488

## DISCUSSION

Plaintiff's contention is to the effect that the employees of the contractor were business invitees and that the obligation of the Government was to provide them with a safe place to work. It is further contended that the stacks were deceiving in their appearance of stability and that the existence or non-existence of the stabilizing racks could not be disclosed by ordinary observation, it being conceded that the stack upon which Santomassino was working contained no rack.

The defendant contends that the general obligation of an employer to provide a safe place to work does not apply under the circumstances here. It contends that the condition of the stacks as to stability was known to the contractor; that he provided ladders, tools and directed the method of the performance of the work of removing the excess paint. It is further contended that the Government's supervision existed only as to the result attained, not to the method employed.

■ The general principle of law, to the effect that the owner of a structure is under the obligation to provide a safe place to work available to employees of a contractor engaged in the performance of work therein, is not disputed. Caspersen v. LaSala Bros., 253 N.Y. 491, 171 N.E. 754. This rule has its basis in common law and has been codified by Section 200 of the New York Labor Law, McKinney's Consol. Laws, c. 31. The duty imposed is not absolute; it does not protect against an obvious danger, neither is it applicable where the work itself creates the hazard. Mullin v. Genesee County El. L., P. & Gas Co., 202 N.Y. 275, 95 N.E. 689. Likewise it affords no basis of liability upon the owner for injuries sustained by reason of the use of defective equipment or appliances furnished by the contractor. Iacono v. Frank & Frank Contracting Co., 259 N.Y. 377, 182 N.E. 23, or by reason of the method used in the performance of the work. Borshowsky v. B. Altman & Co., 280 App.Div. 599, 116 N.Y.S.2d 299, aff'd. 306 N.Y. 798, 118 N.E.2d 818; Zucchelli v. City Const. Co., 4 N.Y.2d 52, 172 N.Y.S.2d 139, 149 N.E. 2d 72.

The decision in Employers Mut. Liability Ins. Co. of Wisconsin v. DiCesare and Monaco, etc., Corp., 9 A.D.2d 379, 194 N.Y.S.2d 103 discusses at length the above general principle, its application and limitations. Both plaintiff and defendant cite the above decision as an authority for their contentions. Reference thereto and the many decisions cited therein are therefore deemed sufficient to afford a background for the application of the principles referred to therein to the facts of this litigation.

■ Here it was not contemplated that the stacks of rubber would become a place to work. The labor contracted for had no relation to or connection with the stacks themselves. They were involved only by reason of the negligent performance of the painting contract. It was the action of the contractor which not only dictated the work to be performed in removing the paint but also the place of its performance. Through the action of the contractor, the cleaning of the bales became "an integral part of the construction work in progress" and the employees were not thereby " * * * provided not with a place to work but with a thing to work upon". Employers Mutual Liability Ins. Co. of Wisconsin v. DiCesare & Monaco etc., Corp., supra, 9 A.D.2d at 384, 194 N.Y. S.2d at 109. See also Olsommer v. George W. Walker & Sons, Inc., 4 A.D. 2d 424 at 433, 166 N.Y.S.2d 323. The liability of an owner may not be predicated upon a situation " * * * where the work itself is of an unsafe nature or the defects are due to the imperfact and negligent work of the contractor himself". Kowalsky v. Conreco Co., 264 N.Y. 125 at 128, 190 N.E. 206 at 207. "An owner's duty to furnish a safe place to work is not breached when a subcontractor's employee puts a common structural object to an unintended or unusual usage". Italiano v. Jeffrey Gar-

den Apts. Section II, 3 A.D.2d 677 at 678, 159 N.Y.S.2d 338 at 341.

In summary, the negligent performance of the contracted work added the additional obligation of the contractor to remove the paint from the bales. This obligation, by the act of the contractor alone, thus became a part of the work to be performed. The oft quoted statement, taken from O'Connell v. Clark, 22 App.Div. 466 at 467, 48 N.Y.S. 74 at 75, is applicable here. "But the principle of a safe place [to work] does not apply where the prosecution of the work itself makes the place, and creates its dangers".

Plaintiff's contention that the unstable condition of the stacks required affirmative action on the part of the defendant will be briefly discussed. The stacks were not intrinsically dangerous for stockpile storage for which they were intended. "They became dangerous only through the manner of their use". Employers Mut. Liability Ins. Co. of Wisconsin v. DiCesare and Monaco, etc., Corp., supra, 9 A.D.2d 385, 194 N.Y. S.2d 109. The situation was obvious and known by the contractor. Even if it be considered that the defendant had a duty to warn as to the condition of the stacks, that obligation was performed. During the course of the painting contract, defendant's superintendent was told by Government inspectors that it was dangerous for the painters to be on the stacks. The jurisdiction of the inspector was questioned by the superintendent but he, the superintendent, advised that he would take care of the matter. That the superintendent was aware of the danger is clear from his own testimony, to wit: "We instructed the men to stay off of the rubber as much as possible and be careful because it was dangerous to work around these bales of rubber". "I repeated my instructions to be careful. From time to time while we were painting over the bales of rubber and while we were cleaning the spattered paint from the bales in both buildings." There is no direct evidence that notice of the danger was brought to the decedent as an individual but to require same would impose "a standard of duty exceeding reasonable bounds". Storm v. New York Telephone Co., 270 N.Y. 103 at 109, 200 N.E. 659 at 662. It is no answer that a Government inspector was standing with the superintendent within six or eight feet from the place of the accident and must have observed the means and method by which the work was being performed. The inspector's obligation was " * * * to observe the quality of contract performance" and he was not a conduit for a notice of the danger involved. Chaney v. New York City Transit Auth., 12 A.D.2d 61 at 68, 208 N.Y.S.2d 205 at 211. The decision in Wohlfron v. Brooklyn Edison Co., Inc., 238 App.Div. 463, 265 N.Y.S. 18 is not in point. The inspectors in that case were charged with the "safety" provisions of the contract. Although the plaintiff makes no claim against the contractor here, the state of the record is such as to show no negligence upon the defendant and the contractor is to be charged with " * * * responsibility for the conduct of an enterprise admittedly its own * * * ". Hooey v. Airport Construction Co., 253 N.Y. 486 at 490, 171 N.E. 752 at 754.

The above will constitute the findings of fact in this case as required by Rule 52, F.R.Civ.P. It is concluded that this court has jurisdiction of the parties and subject matter of this action; that plaintiff has failed to show actionable negligence on the part of the defendant and that the complaint and third-party complaint should be and are dismissed.

Judgment is directed accordingly.