WALTER OLSOMMER, Respondent, v. GEORGE W. WALKER & SONS, INC., Defendant and Third-Party Plaintiff-Appellant. MARTIN FIREPROOFING CO., INC., Third-Party Defendant-Respondent.

Fourth Department, September 11, 1957.

*Roy P. Ohlin* for defendant and third-party plaintiff-appellant.

*Thomas P. McMahon* for third-party defendant-respondent.

*Donald G. Walls* for respondent.

WILLIAMS, J. This is an appeal from a judgment in favor of the plaintiff in an action to recover for personal injuries sustained in the course of construction of an office building. The defendant, George W. Walker & Sons, Inc., was the general contractor, and the third-party defendant Martin Fireproofing Co., Inc., of which plaintiff was an employee, was the subcontractor for the roofing work. The complaint alleged " That the negligence of the defendant, George W. Walker & Son, Inc., consisted in negligently and carelessly maintaining the aforementioned means of access to and from the roof in a dangerous condition; in failing to provide a safe place for the plaintiff to work; in maintaining said roof in such unsafe condition that it constituted and was a nuisance; and in violation of Sections 200, 240 and 241 of the Labor Law of the State of New York." Walker claimed over against Martin on common-law principles. The trial court dismissed the third-party complaint and submitted the plaintiff's case against Walker to the jury solely on the basis of sections 240 and 241 of the Labor Law. Common-law negligence and section 200 were not submitted. The jury returned a verdict in favor of plaintiff and Walker appeals from the judgment entered thereon and from the order dismissing the third-party complaint.

The building in question is a two-story brick structure. In the center of the roof is a flat, rectangular area, connected with the side walls by four areas which are trapezoidal in form. At the time of the accident, the steel superstructure had been completed, and the walls were up. The floors had not been poured, and the roof was not in place. A worker standing on the beams of the roof could look all the way down to the basement. Plaintiff testified: " Q. Was there anything across the structural steel in the rest of the building? A. Well, no. There might be a board lay here or over there might be a piece of plywood or something like that, and there was a piece there and a piece here as you go along down through the floors. Just unfortunately where I fell, there were nothing and I went down through." Plaintiff further testified that his superior was Martin's foreman, one Nyeholt. Defendant's superintendent gave plaintiff no instructions as to what to do.

Plaintiff described the construction of the roof as follows: " T rails " or " bulb rails " were spot welded to the steel

framework of the roof, and that work was done by Martin. Sheetrock was then placed between the bulb rails to act as insulation. That was also Martin's task. Along one side of the building was a scaffold, which apparently had been used by the bricklayers. When directed by Nyeholt to go up on the roof, plaintiff climbed a ladder to the scaffold, which rose to within four feet of the top of the walls. There was also a ladder which extended through the interior of the building and rested against the steel superstructure of the roof. Plaintiff did not use that ladder. Finally, on the slanting part of the roof there was a ladder or " crawl board " which rested on plywood. Plaintiff used that ladder to ascend to his place of work.

Plaintiff was assisting in pouring gypsum upon the flat surface of the roof by means of a hose, and Nyeholt was on the roof directing the Martin employees. Walker's superintendent " was standing in the hole on the ladder which come up on the roof over approximately to the edge of the building. Q. Was he directing the work at all? A. No, he was just standing on the ladder. Q. He was overseeing it? A. That is right "— " he was just standing there watching us operate the gypsum ". It is obvious, from plaintiff's own testimony, that he took his instructions from Nyeholt and that defendant's superintendent exercised no control over his activities whatsoever.

In the course of the work, it began to rain, and Nyeholt directed plaintiff to " Go down and take the hose down "— " before it sets ". Speed was important, else the gypsum would dry in the hose. Nyeholt did not instruct plaintiff to go down in any particular way, and plaintiff then made a choice which may not be considered unreasonable as a matter of law. The " crawl board " had been removed by " somebody ", but there is no proof as to who moved it or when it was moved. The ladder which projected through the roof superstructure was occupied by Walker's superintendent. Plaintiff did not ask him to move because he was in a hurry to clean the hose. Instead plaintiff chose to descend along a slanted I beam, using the bulb rails as steps as he would a ladder. He was an experienced workman and had often descended in that fashion, but he admitted that it was not safe. His feet were secure, but a bulb rail broke loose from its welding and struck him on the head so forcibly that he lost consciousness, " fell all through the building " and landed on the joists.

Nyeholt was called by plaintiff. He testified that " The only conversation I had with any of Walker's employees was the superintendent * * * I introduced myself, and told him

that I was Martin's foreman, and that I was going to put his roof on. Other than that, there was no conversation." Martin supplied the·material for the roofing work. The bulb rails, designed to support form boards, were spot welded to the beams. They were "not a part of the structure" and were not designed to be used as a ladder. That would be dangerous, according to Nyeholt.

Walker's superintendent was called by plaintiff. He was asked: "Did you observe the Martin men working? A. I did. Q. Did you go up to the roof and watch them work? A. Several times." That is the extent of his assumption of control: He "observed" them working. He simply "watched" and "inspected" the work, but had "no control over them while they are doing it".

Defendant called its project engineer, who testified that defendant owned the ladders and scaffolding and permitted Martin to use them but was under no contractual obligation to supply them. On cross-examination he was asked: "And you employed other people? You employed and directed, in other words? A. We employed them, yes. We didn't actually direct their operations, no. Q. No, but you directed the building of this building? That was your general contractor's job; wasn't it? A. In the sense of generality, yes." By that the witness obviously meant only that the general contractor had engaged the numerous subcontractors, and had co-ordinated their work and generally supervised the job, without controlling or directing the specific operations of any subcontractor or its employees.

The trial court submitted to the jury, over defendant's exception, the question whether subdivision 1 of section 240 of the Labor Law had been violated. That statute provides: "A person *employing or directing* another to perform labor of any kind in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, block, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated as to give proper protection to a person *so employed or directed.*" (Italics added.)

Defendant contends that it was not "A person employing or directing" the plaintiff, and we agree that there is no evidence whatsoever that it was. "The words 'employing or directing another to perform * * * painting' mean just that." (*Kluttz* v. *Citron,* 2 N Y 2d 379, 383.) Section 240

" has been construed by many decisions of the higher courts of this State to place the duty of furnishing these devices on the immediate employers of the labor, and this would mean the subcontractor when he is in charge of performance. It would not mean an owner or general contractor, unless such person was actually doing the work himself without the intervention of a subcontractor." (*Komar* v. *Dun & Bradstreet Co.*, 284 App. Div. 538, 541.) In *Iacono* v. *Frank & Frank Contr. Co.* (259 N. Y. 377, 382) the court stated: " Nor do we think that the Legislature, in using the phrase ' a person * * * directing another to perform labor,' had in mind an owner performing work through an independent contractor, or that it intended to impose liability upon such an owner for injuries arising from defective appliances supplied to his laborers by an independent contractor, as though the owner were a person 'directing' such laborers." Our law is thoroughly settled on this point (*Sweeney* v. *Spring Prods. Corp.*, 257 App. Div. 104, affd. 282 N. Y. 685; *Gambella* v. *Johnson & Sons*, 285 App. Div. 580; *Glass* v. *Gens-Jarboe*, 280 App. Div. 378, affd. 306 N. Y. 786; *Manguso* v. *Thirty-Third Equities*, 286 App. Div. 70; *Ellithorp* v. *Adams-Rice Constr. Corp.*, 281 App. Div. 917; *Kaplan* v. *48th Ave. Corp.*, 267 App. Div. 272; *Anderson* v. *143 Linden Blvd. Corp.*, 258 App. Div. 887).

On the record it was error to charge section 240. Defendant clearly did not employ plaintiff (see Labor Law, § 2, subds. 5–7). Neither was there evidence of any instructions or directtions given to him by any of defendant's men. Plaintiff testified that he took orders from Martin's foreman, and was not directed by defendant's superintendent, who simply stood on the ladder and observed the progress of the work. Nyeholt testified that he introduced himself to defendant's superintendent " and told him that I was Martin's foreman, and that I was going to put his roof on. Other than that, there was no conversation." Martin was an independent contractor whose employees were not controlled or directed by defendant. The latter merely co-ordinated the work and advanced the progress of the job, as any general contractor would do.

Over defendant's exception, the trial court also read to the jury subdivision 4 of section 241 of the Labor Law: " If the floor beams are of iron or steel, the entire tier of iron or steel beams on which the structural iron or steel work *is being erected* shall be thoroughly planked over, except spaces reasonably required for proper construction of the iron or steel work, for raising or lowering of materials and for stairways and elevator shafts designated by the plans and specifications."

(Italics added.) Plaintiff did not prove any facts that would bring the other subdivisions of section 241 into play and places no reliance upon them in his brief. Neither has plaintiff at any time sought to prove a violation of any rule of the Board of Standards and Appeals. Rule 23–7.2 (N. Y. Off. Comp. of Codes, Rules & Regulations, [7th Supp.] p. 396) provides: '' The entire erection floor shall be solidly planked over and there shall be a floor not more than two stories below the tier of beams on which bolting, riveting, welding or painting of structural steel *is being done*. The planking shall be laid tight except for access openings, be securely fastened to the framework of the structure, and shall be of proper thickness to carry the working loads but shall not be less than two inches thick.'' (Italics added.)

The duty of compliance with subdivision 4 of section 241 rests upon '' All contractors and owners, when constructing or demolishing buildings or doing any excavating in connection therewith ''. Where planking is required, the general contractor has the active duty of supplying it (*Employers' Liability Assur. Corp.* v. *Post & McCord*, 286 N. Y. 254, 264). The statute represents a legislative recognition of the dangers attending steelwork, both for the men actually engaged in it and for those below who may be injured by falling objects. Both classes of men are within the statutory protection (*Lyles* v. *Terry & Tench Co.*, 227 N. Y. 361; *Schramme* v. *Lewinson,* 126 App. Div. 279, 281; *Walters* v. *Rao Elec. Equip. Co.*, 289 N. Y. 57; *Caminiti* v. *Matthews Constr. Co.*, 241 App. Div. 879). The section has been construed to mean that '' upon the setting and bolting of the floor beams it became the duty of the employer to then floor over the whole space,'' with the exceptions expressed in subdivision 4 of section 241 (*Drummond* v. *Norton Co.*, 156 App. Div. 126, 132, affd. 213 N. Y. 670). The planked area may then be used as an '' erection floor '', to employ the language of rule 23–7.2. Workmen then enjoy the protection of a solid work area. We have discovered no case clearly holding that the requirement of planking is designed to protect a workman above the planked floor, which may serve to break his fall. The contrary was suggested by the Third Department in *Ithaca Trust Co.* v. *Driscoll Bros. & Co.* (169 App. Div. 377, affd. 220 N. Y. 617), but the Court of Appeals, while affirming on a stipulation for judgment absolute, indicated that a recovery might be predicated on the theory that the failure to plank over a lower floor had contributed to the injuries of a falling workman.

Assuming, however, without deciding, that subdivision 4 of section 241 in a proper case may be held to protect a workman laboring above the floor which is required to be planked, we do not believe that it will assist this plaintiff. The statute requires planking of " the entire tier of iron or steel beams on which the structural iron or steel work is being erected ". The testimony is that the structural steelwork had been completed at the time of the accident. There was then no such work " being erected "; consequently, there was no requirement of planking. The requirement of planking does not survive the performance of the structural steelwork. Even while it continues, the statute excepts " spaces reasonably required for proper construction of the iron or steel work ". When it is finished and the walls are up and the roof is being put on and the floors are ready to be poured — the situation at the time of the accident — planking or other temporary flooring is both unnecessary and impractical. We construe subdivision 4 of section 241 as limited to the time and place of erection of structural steel (see *Duggan* v. *National Constructors & Engineers*, 223 App. Div. 163, 167); in effect, that is what it says, and its purpose calls for no broader interpretation. It is designed to protect the general laboring force, and particularly those whose work takes them into the uppermost parts of a skeletal structure during a peculiarly hazardous period of construction. When that period is over, however, and the structural steelwork has ceased, there is no requirement of planking in favor of roofers, carpenters, and others putting in the roof and floors. The statute is limited in its operation to " the entire tier of iron or steel beams on which the structural iron or steel work is being erected ", and upon the completion of that work, roof workers must seek the protection of such of the various safety devices enumerated in section 240 as are necessary under the circumstances. The duty of supplying them, however, rests not upon the general contractor as such but upon the " person employing or directing another to perform labor ". Appellant is not such a person.

The case is unchanged by rule 23–7.2 of the Board of Standards and Appeals, upon which plaintiff does not rely and which was not submitted to the jury. There was no " erection floor " within the meaning of the rule and no " tier of beams on which bolting, riveting, welding or painting of structural steel is being done." Furthermore, the rule, even if applicable, requires no more than planking two stories below the tier on which the work is being done. Since plaintiff did not fall below the first floor

bar joists (and by some testimony, the second), the failure to plank them over could not have contributed to the injuries.

We conclude that the trial court erred in charging subdivision 1 of section 240 and subdivision 4 of section 241 of the Labor Law. For the error in submitting those subdivisions the judgment must be reversed. The remaining question is whether to order a new trial or to dismiss the complaint.

The court refused, over plaintiff's exception, to instruct the jury regarding section 200 of the Labor Law, which provides: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein. The board shall make rules to carry into effect the provisions of this section." Neither did the court submit to the jury the question of defendant's common-law duty negligence. The statute is declaratory of the common-law duty of reasonable care (*Sgandurra* v. *220 Estates,* 185 Misc. 283, 285–286, affd. 270 App. Div. 834). A general contractor for the construction of a building, exercising general control and superintendence, owes to employees of subcontractors the duty of exercising reasonable care to make safe the places of work provided by him and the approaches thereto (*Hooey* v. *Airport Constr. Co.,* 253 N. Y. 486; *Caspersen* v. *La Sala Bros.,* 253 N. Y. 491). In the present case, however, the bulb rails were less "a place of work" than a part of the work itself.

The danger may have been increased by Martin's failure to provide suitable safety devices, as required by the Labor Law, but that neglect is not chargeable to Walker. "A general contractor is not obliged to protect employees of his subcontractors against the negligence of their employers" and owes them "only the duty of making safe by reasonable care the places of work provided for by him and the ways and approaches, as distinguished from apparatus and machinery supplied by the subcontractor-employer" (*Gambella* v. *Johnson & Sons,* 285 App. Div. 580, 582). An owner or general contractor is not obliged to intervene to deter a subcontractor's employee from doing his work without a safety device which the subcontractor neglects to furnish (*Hess* v. *Bernheimer & Schwartz Brewery Co.,* 219 N. Y. 415; *Borshowsky* v. *Altman & Co.,* 280 App. Div. 599, affd. 306 N. Y. 798; *Italiano* v. *Jeffrey Garden Apts.,* 3 A D 2d 677). As stated in *Iacono* v. *Frank & Frank Contr. Co.* (259 N. Y. 377, 381, *supra*): "We know of no duty resting upon an owner or a general contractor to inspect the machinery and

tools furnished by a subcontractor, which that contractor exclusively possesses and controls; nor of any duty, after an inspection disclosing defects, to make repair of a defective appliance.'' There was in this case no assumption of control or assurance of safety (cf. *De Lee* v. *Pardy Constr. Co.,* 249 N. Y. 103; *Broderick* v. *Cauldwell-Wingate Co.,* 301 N. Y. 182). Walker exercised no control of the performance of Martin's work, although the former's superintendent apparently observed it and inspected the result. The testimony is that the general contractor was under no contractual obligation to furnish any equipment or devices. Martin was permitted to use various ladders, which were not defective, owned by defendant, but there is absolutely nothing to indicate that the crawl board was removed by any Walker employee, and the natural inference is to the contrary, for the Walker men were not working at the time of the accident. In short, '' the place where the plaintiffs worked and where the accident occurred was not a place within the scope or meaning of section 200. The place was one created by plaintiffs' employer, the third-party defendant, and constituted part of the work in progress. It was solely within the control of the third-party defendant. Consequently no liability could be found as against the third-party plaintiffs under section 200 of the Labor Law '' (*Zuccelli* v. *City Constr. Co.,* 286 App. Div. 842; *Butler* v. *D. M. W. Contr. Co.,* 286 App. Div. 828).

Plaintiff undoubtedly increased the danger by electing to use the bulb rails as a ladder. They were not a permanent part of the structure and were not designed to bear human weight. Plaintiff was an experienced worker, and he admitted that it was an unsafe thing to do. '' A plant is defective when any part of it is not in a proper condition for the purpose for which it was intended and it is also defective when it is so incomplete that the use of the plant is dangerous by reason of the failure to furnish reasonably necessary parts for the purpose for which it is used.'' (*Hess* v. *Bernheimer & Schwartz Brewing Co.,* 219 N. Y. 415, 418, *supra,* quoting from *Wiley* v. *Solvay Process Co.,* 215 N. Y. 584, 591). The bulb rails upon which plaintiff elected to descend were, so far as the record discloses, safe and proper for the purpose for which they were installed (cf. *Borshowsky* v. *Altman & Co., supra*; *McLean* v. *Studebaker Bros. Co.,* 221 N. Y. 475). '' An owner's duty to furnish a safe place to work is not breached when a subcontractor's employee puts a common structural object to an unintended or unusual usage '' (*Italiano* v. *Jeffrey Garden Apts.,* 3 A D 2d 677, 678,

*supra*; *Marshall* v. *City of New York,* 308 N. Y. 836; *Remelius* v. *Corbetta Constr. Co.,* 6 Misc 2d 852, affd. 265 App. Div. 827, motion for leave to appeal denied 289 N. Y. 855).

Since there was no evidence of any negligence on the part of Walker, the trial court correctly refused to charge either section 200 of the Labor Law or common-law negligence. For the same reason, there is no point in ordering a new trial. The complaint should be dismissed. The dismissal of the third-party complaint was proper because the third-party plaintiff is not subject to liability. The judgment and order should be affirmed insofar as they dismiss the third-party complaint, and otherwise reversed.

GOLDMAN, J. (dissenting). The question presented by this appeal is whether there is sufficient evidence to support the verdict of the jury in favor of the plaintiff as against the defendant, George W. Walker & Sons, Inc., the general contractor. In view of the detailed recitation of the facts in the majority opinion, there is no need to repeat them here. We believe that there is testimony in the record which may well uphold the verdict of the jury.

If the plaintiff is to succeed his recovery must be founded upon violations of sections 240 and 241 of the Labor Law. In view of the manner in which the issues were submitted to the jury the success of the plaintiff under section 241 of the Labor Law must rest upon subdivision 4 of that section. We have then the respective problems of whether there was a violation of section 240 of the Labor Law which provides, as a condition of liability, that the person to be held responsible must be " employing or directing another "; and subdivision 4 of section 241 which requires thorough planking of the entire tier of iron or steel beams on which the structural iron or steelwork is being erected.

It is axiomatic that in view of the verdict we must examine the facts in the light most favorable to the plaintiff. With this principle in mind, we point to specific portions of the record which would support the finding implicit in the verdict that the defendant general contractor was directing plaintiff in the prosecution of the application of the gypsum to the deck of the building. Such evidence is found in plaintiff's testimony that " a Walker superintendent " was overseeing the job and was on the ladder coming up through the roof at various times and at the time of the accident. Defendant admitted, in lieu of reception in evidence of a deposition of Mr. Walker that the defendant was controlling the job. Defendant Walker's super-

intendent of construction, Joseph Lippert, gave further evidence of directing the job by his statement that although his crew had discontinued work by reason of the inclement weather, he remained on the job watching the Martin men as they applied the gypsum. All of the ladders used to gain access to the roof were placed in the position where located under the instructions of defendant Walker's superintendent and he admitted that he went up the ladder to the roof several times on the day of the accident to oversee the work of the plaintiff and the other Martin men. Furthermore, the same superintendent inspected the job from time to time and the jury was justified, by direct proof and by inference from facts, in finding that defendant Walker's superintendent was something more than a mere observer.

Nor are we in accord with the prevailing members of this court that there was no evidence for submission to the jury as to whether defendant was a " person employing or directing " the plaintiff. We believe that the result reached by the majority is in conflict with *Kluttz* v. *Citron* (2 N Y 2d 379) where, unlike the instant case, the jury verdict was sustained. Here, the jury could well have found that the defendant was directing the plaintiff.

There is further testimony that the defendant, as general contractor, directed the construction operation generally, that the floor had not been completed on the second story and where not completed no planking had been supplied. There is also proof that although defendant Walker's superintendent knew men were working on the roof there was no planking on the tier underneath although it was possible to have covered the openings by planking. There are various facts from which the jury could have drawn the conclusion that if there was proper planking the plaintiff's fall would have been broken and that he would not have suffered such serious injuries. As Judge LEWIS said in *Noble* v. *Marx* (298 N. Y. 106, 111) : " we think there was evidence ' enough to countenance the verdict ' ".

We believe the verdict must be sustained on this ground alone for clearly there is sufficient evidence from which the jury could have found that the injuries plaintiff suffered were caused by the general contractor's failure to plank. Liability may well rest upon that ground. (*Ithaca Trust Co.* v. *Driscoll Bros. & Co.*, 220 N. Y. 617.)

At the close of the court's charge, plaintiff's attorney made the following request: " Your Honor, I have a couple of requests. I ask Your Honor to charge the jury that if the plaintiff, Olsommer, was injured because the floors in the building were

not planked over, they shall bring in a verdict in favor of the plaintiff.'' To this request, the court replied: '' Well, I think I covered that ''. No specific objection was taken by the defendant to this charge and it follows that the failure to object made this charge the law of the case.

Again we turn to Judge Lewis in *Antonsen* v. *Bay Ridge Sav. Bank* (292 N. Y. 143, 146): ''In view of those instructions — which became the law of the case and to which we must assume the jury gave full heed (*People* v. *Guardino,* 286 N. Y. 132, 135) — there is implicit in the verdict for the plaintiff a finding '' which the court held supported the verdict. The same principle is found in *Buckin* v. *Long Is. R. R. Co.* (286 N. Y. 146, 149) where the court wrote: '' Thus, although erroneous, this charge became the law of this case and requires a reversal of the judgment in favor of the plaintiff.''

The judgment and order should be affirmed.

All concur, except Bastow and Goldman, JJ., who dissent and vote for affirmance in an opinion by Goldman, J., in which Bastow, J., concurs. Present — McCurn, P. J., Kimball, Williams, Bastow and Goldman, JJ.

Judgment and order affirmed insofar as they dismiss the third-party complaint and grant costs to the third-party defendant, and otherwise judgment and order reversed on the law and complaint dismissed, without costs of this appeal to any party. We have examined the facts and find no error therein.