Esther Chaney, as Administratrix of the Estate of Walter Chaney, Deceased, Respondent, *v.* New York City Transit Authority, Defendant-Appellant and Third-Party Plaintiff-Respondent.

George Campbell et al., Individually and as Partners Doing Business under the Name of George Campbell & Co., Third-Party Defendants-Appellants.

Kostas Godulas, Respondent, *v.* New York City Transit Authority, Defendant-Appellant and Third-Party Plaintiff-Respondent.

George Campbell et al., Individually and as Partners Doing Business under the Name of George Campbell & Co., Third-Party Defendants-Appellants.

First Department, December 13, 1960.

62

*William F. McNulty* of counsel (*Rudser & Fitzmaurice,* attorneys), for third-party defendants-appellants.

*Benjamin H. Siff* of counsel (*William D. Van Pelt,* attorney), for Esther Chaney, respondent.

*Edward W. Summers* (*Helen R. Cassidy* with him on the brief; *Daniel T. Scannell,* attorney), for New York City Transit Authority, appellant and third-party plaintiff-respondent.

*Joseph H. Sand* of counsel (*Herbert Burstein* with him on the brief; *Zelby & Burstein,* attorneys), for Kostas Godulas, respondent.

BREITEL, J.   One painter sustained serious injuries and the other died when a passenger in a subway station brushed or was pushed against the scaffolding on which the two were working.   The painters were employed by an independent contractor which, under contract with the New York City Transit Authority, was engaged in painting the 181st Street station on the Independent Eighth Avenue subway line.   The surviving painter and the estate of the other sued the Authority in negligence. The gravamen of the alleged negligence is the failure adequately to rope or barricade the vicinity of the scaffolding so as to prevent precisely the kind of inadvertent interference by a passenger with the scaffolding which resulted in the accident.

The question in the case is whether, as plaintiffs contend, the Authority owed a duty to the painters to safeguard the vicinity of the scaffolding, as a part of its duty to provide them with a safe place to work, or whether, as defendants contend, only their employer owed such duty, as a part of its obligation to provide them with safe appliances.   In the latter event plaintiffs' remedies are exclusively under the Workmen's Compensation Law.

After a jury trial in this consolidated action the Authority was found liable to plaintiffs.   The Trial Justice, to whom the affected sides had submitted the question of third-party liability, granted judgments in favor of the third-party plaintiff, the Authority.   The Authority's third-party complaints rested on its contract with the painting contractor, which contained a broad and quite explicit provision for indemnification.

Both the Authority and the painting contractor, the latter as third-party defendant, have appealed.   On the question of liability to plaintiffs, they are agreed, and urge that there was no breach of duty by the Authority and that, therefore, the successive liabilities were improperly determined.   Hence, they say, the judgments in favor of plaintiffs and the dependent judgments over should be reversed, and all complaints dismissed.

Because it is concluded that the Authority did not fail in its duty to provide a safe place to work, the judgments must be reversed and the complaints dismissed.   Beyond this there might

be substantial criticism of the verdicts as grossly excessive, and as against the weight of the credible evidence.

The facts of the accident were as follows:

On May 10, 1955, in the early afternoon, painters Chaney and Godulas were engaged in painting the ceiling above one of two stair wells, containing two opposing stairways, on the mezzanine floor of the subway station. They were standing on planks, which were not tied down, and were known in the trade as "kickers". They were so called because they could be moved as the work progressed. One kicker rested on ladders. One of the ladders was located at the foot of one of the two stairways leading from the train platform, while the other was on a stairway. Another kicker was placed across the other at right angles at one end. The opposite end of this second kicker rested on and extended over the iron railing along the stair well. Indeed, it may have extended as much as three feet beyond the railing into the passageways of the mezzanine. The kickers were not fastened to their supports, but merely rested on them.

The stairways were roped off or barricaded so that they could not be used by passengers while the painting work was in progress. There was also additional roping to keep passengers away from some parts of the scaffolding. Whether there was roping to keep passengers away from the kicker that extended into the passageways beyond the railing of the stair well is disputed. For the purpose of this appeal then, it is assumed for the time being that there was no such roping.

The accident happened when one Schlosser, a passenger, brushed against the projecting kicker, or was pushed against it by still another passenger. The kicker was not displaced, but since it was not tied down, it was sufficiently disturbed to propel the painters to the station platform and stairway respectively, one to his eventual death, and the other to serious injury.

Plaintiffs contend that because the Authority knew that hurrying passengers would be frequenting the various passageways in the station, it had the duty, as owner, under section 200 of the Labor Law,* as part of its duty to provide a safe place to work, to maintain suitable barricades or roping to keep such passengers from interfering with the workmen or the scaffolding. This duty, it is claimed, is not discharged because the contractor may have had a similar duty or because the Authority

---

* Section 200, in entirety, reads as follows: " All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein. The board shall make rules to carry into effect the provisions of this section."

may have relied on the contractor to perform its duty as employer (*Wohlfron* v. *Brooklyn Edison Co.,* 238 App. Div. 463, 465–466, affd. 263 N. Y. 547).

Defendants, on the other hand, contend that the roping or other barricades to surround or protect the scaffolding was exclusively a responsibility of the employer under its duty to provide its employees with safe scaffolding and appliances under section 240 of the Labor Law.\* They emphasize that whether the kickers were permitted to rest loosely on their supports was exclusively the responsibility of the employer and his workmen, and depending upon whether they were so placed or affixed, there would, or might, arise the need for especial protection in the vicinity of such kickers. They emphasize that there was nothing in the place to work — platform, stair wells, railing, stairs, or surrounding subway appurtenances — that was defective or otherwise caused or contributed to the accident. On the contrary, they say, it was the independent actions of third parties — passengers — that, coupled with the management of the work and appliances by the contractor and his employees, made possible or even probable the occurrence of the accident.

The respective contentions can be reiterated in another form: Plaintiffs say the Authority should have safeguarded the area of the work, because the passengers in the area made the area unsafe. Defendants say the area was safe enough but that the contractor should have provided safe scaffolding, which includes the neighboring roping to keep away intruders. Plaintiffs thus say that the Authority failed to provide a safe place to work. Defendants say the contractor failed to provide safe appliances. Hence, the issue is: in which category did the omitted roping fall.

It is, of course, elemental law, that included in the owner's obligation to provide a safe place to work is the obligation to keep the ways and approaches to the place of work in a reasonably safe condition (*Iacono* v. *Frank & Frank Contr. Co.,* 259 N. Y. 377, 381; *De Lee* v. *Pardy Constr. Co.,* 249 N. Y. 103). But this thesis does not dispose of the problem in this case. There is involved the further question whether the omitted roping was a part of the work, in which event its provision was exclusively the obligation of the contractor, or whether it related to the

---

\* Section 240, in pertinent part, reads as follows: "1. A person employing or directing another to perform labor of any kind in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed."

maintenance of a safe approach to the work, in which event the Authority had the nondelegable duty to assure its presence.

An immediate criterion is suggested. It is evident that roping to protect scaffolding, especially loose and untied scaffolding, must move with the work. This strongly suggests that such roping is an appurtenance of the work rather than of the place to work, or the ways or approaches to the place to work. It has been repeatedly held that the owner is not obligated as a part of the duty to furnish a safe place to work to supervise, in the interest of the employees of the subcontractor, the latter's plant and appliances in the prosecution of the work or its details (*Zucchelli* v. *City Constr. Co.*, 4 N Y 2d 52, 56).

The proper distinction becomes even clearer when one examines the very precedent on which plaintiffs place their greatest reliance: *Caspersen* v. *La Sala Bros.* (253 N. Y. 491). In that case, plaintiff and his fellow workmen were employed on the ground floor. Above them, but not visible to them unless they especially looked, was a shaftway. Down this shaftway fell the bricks, dropped by employees of other subcontractors working at the 10th or 11th floors, which occasioned plaintiff's injuries. In holding the owner, acting as general contractor, liable, the court (per CARDOZO, Ch. J.) emphasized that only the owner knew of the work being done in the upper reaches of the shaftway and that therefore it was obliged to provide protection to such as plaintiff as the shaftway was an approach to the place to work. It was said: " The defendant is not chargeable with the negligence of the masons, the servants of the subcontractor. It is chargeable with its own negligence in failing to guard the ways against perils unknown to the worker ". (pp. 494–495.) Again, after stating that one is not bound to go beyond the practicable and reasonable, it was said: " This does not mean, however, that there will be enjoyment of a like immunity where the dangers are obscure to the worker and easily corrected." (p. 495.)

In this case, on the contrary, as compared with the *Caspersen* case, it was the employer and the painters who from hour to hour and day to day carved out for themselves an enclave in which to work. It was they who, as part of the work, created the " peril ", and it was not obscure at all. It was they and not the owner who knew, from time to time, what " appliances " were required to accomplish their work in the larger place to work supplied to them by the Authority, and how those " appliances " would increase or decrease the hazards to those who used them.

*Wohlfron* v. *Brooklyn Edison Co.* (238 App. Div. 463, affd. 263 N. Y. 547, *supra*), a leading case, and one relied upon by plaintiffs in another context, expresses the rule in similar fashion. Thus, in that case, in holding the owner to the non-delegable duty. of maintaining reasonably safe ways and approaches to the place of work, it was stated that the owner was obliged to " see to it that the workmen have reasonable protection against the consequences of hidden dangers known to the owner or general contractor, or which ought to have been known by him, and not known to those engaged in the particular work " (p. 465).

A further argument urged by defendants is a cogent one, and also assists in recognizing the proper distinctions. It is·to the effect that an unsafe scaffold is not only one that suffers from a defect. It may be one that is so used or adapted in the circumstances as to render it unsafe. Surely, if outdoors a contractor used such loosely joined scaffolding that a wind would disturb the appliances, it would hardly be urged that the owner should have provided windbreaks. Thus, here, to use the loosely placed kickers where passengers were apt to pass, without providing appurtenant ropes to exclude intruders is using and providing an unsafe scaffold within the meaning of section 240 of the Labor Law. (*Zucchelli* v. *City Constr. Co.*, 4 N Y 2d 52, 56, *supra*; *Broderick* v. *Cauldwell-Wingate Co.*, 301 N. Y. 182, 187; *Iacono* v. *Frank & Frank Contr. Co.*, 259 N. Y. 377, 381, *supra*; *Employers Mut. Liab. Ins. Co.* v. *Di Cesare & Monaco Concrete Constr. Corp.*, 9 A D 2d 379, 383.)

Plaintiffs also argue that if a passenger had been injured as a result of the omitted roping there would be little question of the Authority's liability, and they cite *Dawson* v. *New York & Brooklyn Bridge* (31 App. Div. 537). Of course, the passenger is in a different category. Whether the duty is owed to a passenger who had nothing to do with the work is immaterial. Indeed, even if Schlosser, who brushed against the protruding kicker, had been injured and could recover against the Authority, it would establish nothing as to the liability to the workmen who knew of and created the very condition as part of the work.

The contrary view would mean that the Authority would have the duty — and, indeed, the right — to provide and control the roping about the scaffolding, and, one must assume, the method of fastening the kickers. This makes neither practical nor theoretical sense. It would not reflect the way operations are or can be conducted.

To some extent, the preceding discussion brings one to another issue raised in the case, namely, whether the Authority had

notice of the condition which caused the accident. It is not disputed that the Authority could not be liable, unless it had notice of the condition and the danger it presented (*Zinsenheim* v. *Congregation Beth David,* 10 A D 2d 501; *Employers Mut. Liab. Ins. Co.* v. *Di Cesare & Monaco Concrete Constr. Corp., supra*). Such notice would or could arise only if the Authority must have also been aware that the work was being done with the kind of scaffolding involved here — kickers, resting on ladders, and even using the stair well railing as a support, all without fastening of any kind. Only if the Authority is chargeable with supervision of the scaffolding, which concededly it is not, would it also be chargeable with notice of the hazard created in the circumstances here.

Nor is the matter of notice cured by the undisputed fact that there were representatives of the Authority present. It was the duty of one only to observe the quality of contract performance by the contractor, and of others only to provide protection to the painters from moving trains. Obviously, men charged with such limited responsibilities were not conduits for notice with respect to the omitted roping and the untied kickers in this case, any more than the agents in the change booths might be (cf. *Ford* v. *Grand Union Co.,* 268 N. Y. 243, 252; Restatement, Agency 2d, § 272).

Consequently, because the omitted roping or, in the alternative, the excessive projection of the kicker, or in the further alternative, the untied condition of the kickers, or any combination of these made the scaffolding unsafe, rather than that the Authority provided an unsafe place to work, plaintiffs are without remedy against the Authority. Were it necessary to reach the question, it is evident that, on the credible evidence, the roping was not absent, as claimed by plaintiffs, and a new trial would then be required. Since the case is determinable, however, on the issue of law, it would be bootless to discuss the conflicting evidence on this issue. A similar comment applies to the quantum of the verdicts.

Accordingly, the judgments in favor of plaintiffs should be reversed on the law, and on the facts to the extent that the verdicts are against the weight of the credible evidence and excessive in amount, the verdicts vacated, and the complaints dismissed, and, similarly, the judgments in favor of third-party plaintiff against third-party defendant should be reversed on the law, and the third-party complaints dismissed, with costs in each case to the defendant and third-party defendant against plaintiffs and third-party plaintiff respectively.

Botein, P. J., Valente, McNally and Stevens, JJ., concur.

Judgments unanimously reversed on the law and on the facts to the extent that the verdicts are against the weight of the credible evidence and excessive in amount, the verdicts vacated, and the complaints dismissed, and, similarly, the judgments in favor of third-party plaintiff against third-party defendant should be reversed on the law, and the third-party complaints dismissed, with costs in each case to the defendant and third-party defendant against plaintiffs and third-party plaintiff respectively.