Leonard **WALLACH**, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 278, Docket 26478.

United States Court of Appeals
Second Circuit.

Argued March 22, 1961.

Decided May 22, 1961.

Jacob Rassner, New York City (Theodore H. Friedman, New York City, on the brief), for plaintiff-appellant.

Stephen Kurzman, Asst. U. S. Atty., Southern Dist. of New York, New York City (Morton S. Robson, U. S. Atty., Southern Dist. of New York, New York City, on the brief), for defendant-appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Plaintiff is appealing from a judgment for the United States handed down by Judge Dawson in this Tort Claims Act suit brought in the Southern District of New York. Wallach, on September 2, 1954, was a painter employed by the M. R. M. Contracting Company. That firm had contracted to do more than $60,000 of repairs and redecorating work in the United States Post Office Building in Brooklyn. Plaintiff was painting the ceiling in the main workroom of the Post Office from a scaffold, erected solely by M. R. M., suspended twenty feet or more above the floor. A straight ladder supporting one end of the scaffold plank moved laterally causing the plank, and plaintiff, to fall. There is little doubt that the scaffolding was negligently conceived and erected and that it violated New York statutory safety standards. Judge Dawson held, however, that the

government was not liable for the negligence of the independent contractor.

Appellant attacks the finding that the United States was effectively shielded from liability by the presence of an independent contractor on four grounds: (1) that the government, by contract, sanctioned and authorized the negligent violation of New York safety regulations; (2) that defendant retained effective "control" over the conduct of the painting, thereby making it liable pursuant to § 240 of the New York Labor Law; (3) that § 241 of the Labor Law imposes a direct duty on the owner of property in the present situation—over and above the duty placed only on the contractor by the terms of § 240; and finally (4) that the insulation ordinarily accorded a property owner in these circumstances is inapplicable because the work being done was inherently dangerous.

■ None of these points is well taken. The "authorization" to violate state safety regulations relied upon is the contract clause 1–10 Building Codes. "State and local Building Codes and Regulations do not apply to work inside the property lines of Government-owned properties * * *" The extreme preoccupation of other parts of the agreement with job safety and accident prevention belies the interpretation appellant urges on us. Further, and dispositive of this contention, the Supreme Court in James Stewart & Co. v. Sadrakula, 1940, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, interpreted an almost identical clause as not purporting to relieve the contractor from compliance with local safety regulations; the Court read the clause as relieving the contractor from certain narrow provisions concerning types of material and fire hazards, etc. but not from safety regulations generally. 309 U.S. 94, at page 105, 60 S.Ct. 431.

■ The Labor Law, § 240, sets down elaborate requirements concerning bolts, bracing and safety rails on scaffolds. It directs generally that any "person employing or directing another to perform labor of any kind in the erection, * * * repairing, * * * painting * * * of a building or structure shall furnish * * * or cause to be furnished * * * scaffolding * * * so constructed, placed and operated as to give proper protection to a person so employed or directed."

The New York Court of Appeals has held that the owner or general contractor is not such a "person employing or directing another to perform labor" as regards employees of a sub-contractor. Iacono v. Frank & Frank Contracting Co., 1932, 259 N.Y. 377, 182 N.E. 23. Plaintiff seeks to avoid that holding by asserting that, because of extensive control over the work exercised by the United States, the defendant "in fact" was responsible to Wallach for the safety of the appliances furnished him. Although offering no evidence of *actual* control of the job, appellant points principally to the general "Government Supervision" clause,[1] and relies upon myriad provisions concerning wages and hours, assignability, accident prevention, inspection and general specifications to round out the picture.

"[A] general ability to control the work in order to insure that it is satisfactorily completed in accordance with the requirements of the contract does not of itself make the hirer of an independent contractor liable for harm resulting from negligence in conducting the details of the work." Gallagher v. United States Lines Co., 2 Cir., 1953, 206 F.2d 177, 179. "Control" for the purposes of § 240 of the Labor Law is closely akin to the problem presented in Gallagher in a case involving common law negligence. Reservation of the *right* to inspect and to enforce compliance with safety regulations may be distinguished from an *undertaking* by the owner to oversee the details and manner of per-

---

1. 1–3 Government Supervision (a) All work shall be done under the supervision of the authorized Government Representative in charge of the work at the site.

formance. This distinction was sharply drawn in Uppington v. City of New York, 1901, 165 N.Y. 222, 59 N.E. 91, 53 L.R.A. 550, where the municipality was held not liable for negligence of an independent contractor even though it had retained the right to demand the discharge of incompetent help and to insist generally upon high safety standards. That the New York courts have not receded from that position since the turn of the century is evidenced by Olsommer v. George W. Walker & Sons, 1957, 4 A.D.2d 424, 166 N.Y.S.2d 323, affirmed 1958, 4 N.Y. 2d 793, 173 N.Y.S.2d 28, 149 N.E.2d 528, a case arising under § 240 where the superintendent of the main contractor was "looking on" but not "directing" at the time of the mishap. Minus a showing of actual assumption of control by the United States over the details of performance and safety, the general supervision and omnibus clauses of the standard government contract cannot create liability under the state safety provisions.

■ Although New York Labor Law, § 240, is directed solely at persons employing labor, § 241 is not so limited. It sets down requirements for "all contractors and owners when constructing or demolishing buildings or doing any excavating in connection therewith."

The first five subsections concern specific provisions not applicable here; subsection six, however, gives the Board of Standards and Appeals rule making power to provide for the protection of workmen doing excavation, construction and demolition work—"and the owners and contractors for such work shall comply therewith." The Board, pursuant to § 241 and three other sections of the Labor Law giving statutory rule making authorization,[2] has promulgated Industrial Code Rule No. 23, a detailed set of regulations governing the erection, placing and maintenance of scaffolding. Appellant points to these rules as creating liability on the part of the government.

At the outset, it is doubtful whether painting constitutes "construction" within § 241. The subsections preceding the general rule making provision appear to contemplate only the actual erection or demolition of buildings.[3] Even if painting were to fall within the scope of § 241, the Appellate Division, First Department, has interpreted that section as not placing any duty on property owners to provide safe scaffolding for employees of an independent contractor. Komar v. Dun & Bradstreet Co., Inc., 1954, 284 App.Div. 538, 132 N.Y.S. 2d 618. The Court reasoned that the legislature envisaged owner responsibil-

2. §§ 27–a, 28, 29.

3. § 241. Protection of employees on building construction or demolition work including excavation work in connection therewith.

\* \* \* \* \* \* \*

"1. If the floors are to be arched between the beams thereof, or if the floors or filling in between the floors are of fireproof material, the flooring or filling in shall be completed as the building progresses.

"2. If the floors are not to be filled in between the beams with brick or other fireproof material, the underflooring shall be laid on each story as the building progresses.

"3. If double floors are not to be used, the floor two stories immediately below the story where the work is being performed shall be kept planked over.

"4. If the floor beams are of iron or steel, the entire tier of iron or steel beams on which the structural iron or steel work is being erected shall be throughly (sic) planked over, except places reasonably required for proper construction of the iron or steel work, for raising or lowering of materials or for stairways and elevator shafts designated by the plans and specifications.

"5. If elevators, elevating machines or hod-hoisting apparatus are used in the course of construction, for the purpose of lifting materials, the shafts or openings in each floor and at each landing level shall be enclosed or fenced in on all sides by a barrier of suitable height, except on two sides which may be used for taking off and putting on materials, and those sides shall be guarded by an adjustable barrier not less than three nor more than four feet from the floor and not less than two feet from the edges of such shafts or openings.

**72**

ity principally in areas where safety measures taken by sub-contractors were not likely to afford sufficient protection, Komar, supra, 132 N.Y.S.2d at page 622, and found that neither the statute nor the Board intended that the specific limitation of § 240 should be subverted by rules promulgated under § 241, subd. 6. Industrial Code Rule No. 23, § 23–1.2.1; compare Mitchell v. State, Ct.Cl.1960, 24 Misc.2d 853, 203 N.Y.S.2d 770, where there was no conflict with the limiting provision of § 240.

■ Finally, plaintiff urges that aerial painting with its concomitant scaffolding is "inherently dangerous," thereby making the owner's duty of due care non-delegable to an independent contractor. In Hexamer v. Webb, 1886, 101 N.Y. 377, 4 N.E. 755, a case where a passerby was injured by a falling scaffold plank, the Court of Appeals held that a scaffold was not inherently dangerous and denied recovery against the owner, who had hired an independent contractor to do work on the building. It would appear that Hexamer may have been silently overruled in Rohlfs v. Weil, 1936, 271 N.Y. 444, 3 N.E.2d 588. There, a pedestrian hit by a falling painter (from a collapsing scaffold) recovered from the building owner who had "set in operation a process fraught with potential danger as an obstruction to a highway." 271 N.Y. 444, 448, 3 N.E.2d 588, 589. In view of such a threat to public safety, the Court held there was a non-delegable duty to keep the highway in a safe condition. See also Wright v. Tudor City Twelfth Unit Inc., 1938, 276 N.Y. 303, 12 N.E.2d 307, 115 A.L.R. 962.

Whatever may be the state courts' justification for allowing recovery by a pedestrian on the highway against the property owner, it is clear that New York has never allowed recovery by an employee of a sub-contractor in the present situation. There the New York rule has consistently been that the owner or main contractor is under a duty only to furnish a safe place to work. It is the contractor or sub-contractor's duty to provide his own employees with safe tools

and appliances. See e. g., Zucchelli v. City Construction Co., 1958, 4 N.Y.2d 52, 172 N.Y.S.2d 139, 149 N.E.2d 72. In cases virtually indistinguishable from the one at bar, the owner has always prevailed. Iacono v. Frank & Frank Contracting Co., supra; Gambella v. John A. Johnson & Sons, 1955, 285 App.Div. 580, 140 N.Y.S.2d 208; Chaney v. New York City Transit Authority, 1960, 12 A.D.2d 61, 208 N.Y.S.2d 205.

The judgment below is affirmed.