Bess GALBRAITH, as Executrix of the Estate of Benjamin A. Galbraith, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America and United States Department of Defense, Defendants-Appellees.

John L. ASH, Plaintiff-Appellant,

v.

UNITED STATES of America and United States Department of Defense, Defendants-Appellees.

Gertrude J. COLLIER, as Administratrix of the Goods, Chattels and Credits of Ralph Collier, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America and United States Department of Defense, Defendants-Appellees.

James T. POWELL, Plaintiff-Appellant,

v.

UNITED STATES of America and United States Department of Defense, Defendants-Appellees.

Nos. 59–62, Dockets 26420–26423.

United States Court of Appeals Second Circuit.

Argued Nov. 6, 1961.

Decided Dec. 1, 1961.

John F. Noonan, Rochester, N. Y. (on the brief), for plaintiff-appellant Bess Galbraith.

Karz, Michaels & Buetens, Rochester, N. Y. (on the brief), for plaintiffs-appellants John L. Ash and Gertrude J. Collier.

Oviatt, Gilman, O'Brien & Forman, Rochester, N. Y. (on the brief), for plaintiff-appellant James T. Powell.

Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., and John T. Curtin, U. S. Atty., W. D. N. Y., Buffalo, N. Y., on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, and MEDINA and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal from a judgment for the defendant entered by the United States District Court for the Western District of New York. Four cases were consolidated and tried before Judge Harold P. Burke without a jury. Each involves death or injuries sustained in three separate explosions at the plant of Spencer Explosives, Inc., an independent contractor, performing work under a contract with the Government for the manufacture of explosive squibs. The suits were brought under the Federal Tort Claims Act, 28 U.S.C. § 1346.

The squib mixture is a highly sensitive initiating explosive. It is sensitive to friction, heat, shock and static electricity. The adding of butyl acetate to the dry mixture involves serious and foreseeable injury to anyone working on it unless certain precautions are taken. The mixing should be done in a remote control mixing device; the mixture should not be stirred until the butyl acetate has saturated the entire mixture. To protect against static electricity the drying and mixing rooms should be equipped with grounded conductive flooring. Employees handling dinol and the completed mixture should wear conducting shoes or other conductive devices on their feet.

On September 22, 1952 an explosion occurred while appellant, Collier, a powder handler employed at the plant of Spencer Explosives, Inc. was adding butyl acetate to the dry squib mixture. The explosion which resulted in the death of Collier and injury to appellant John L. Ash was caused by the improper and dangerous method used by Collier in stirring the mixture without waiting for the acetate to thoroughly saturate the dry ingredients. This method caused a spark, which exploded the mixture. Judge Burke found Spencer to be negligent in failing to provide adequate, competent, direct and immediate supervision, and in failing to provide adequate protection. Collier was found to be guilty of contributory negligence in preparing and mixing a dangerously large amount of squib mixture.

On March 25, 1953 another explosion occurred while appellant Benjamin Galbraith, a powder mixer employed by Spencer, was adding butyl acetate to the dry squib mixture and Galbraith was injured. In this explosion, Spencer was also found to be negligent in a manner similar to its negligence in connection with the Collier explosion. Similarly, Galbraith was found to be contributorily negligent.

On November 23, 1953, an explosion occurred in which appellant James T. Powell, another powder mixer employed by Spencer, was injured when he entered a building with the intention of adding butyl acetate to a dry mix that he had previously obtained. There was insufficient evidence to establish the cause of that explosion.

Appellants in each of the cases claim that Spencer was not competent to do the work safely and properly and such incompetence caused the explosions. Liability of the appellees is predicated on the alleged negligence of the United States in its selection of an incompetent contractor and failure to provide, in the contract or otherwise, for the taking of needed precautions.

Judge Burke decided, first, that the United States was not negligent in selecting Spencer who was a competent manufacturer of explosives and second, that negligence in awarding contracts and determining what safety precautions were necessary is excepted from the Federal Tort Claims Act by 28 U.S.C. §

2680(a) since it involves discretion at the planning level of government. He, therefore, dismissed the complaint. In our view, since the appellants have no cause of action under New York law, we need not examine the limitations of the United States' waiver of immunity in the Tort Claims Act.

I

■ Appellants contend that the awarding of a contract to an independent contractor which entails the mixing and handling of very sensitive initiating explosives involves a foreseeable risk of harm and that the Government was negligent in its selection of an incompetent contractor, and in failing to provide in the contract, or otherwise, for the taking of needed precautions.

On May 14, 1952, the Government, through its duly authorized Contracting Officer of the Rochester Ordinance District, entered into a contract with Spencer Explosives, Inc. of Spencerport, N. Y., for the manufacture of one million electric squibs for the 3.5 inch rocket, in accordance with specifications furnished by the Government. Prior to the awarding of the contract the regular government procurement regulations were followed. The award had been passed upon and approved by a Board of Awards, a Contract Review Board and the Contracting Officer of the Rochester Ordinance District of the Department of the Army.

Prior thereto and as a part of the contracting procedure, a pre-award survey of Spencer was made by a group of personnel of Rochester Ordinance District. The conclusions of this group were reduced to writing. The record shows and Judge Burke found: both at the time the pre-award survey was made and at the time the contract was awarded, Spencer was financially and technically capable of producing the squibs; Spencer had personnel whose background and experience rendered them competent to produce, to supervise and to instruct others in the production of the squibs; Spencer's physical facilities were adequate and suitable for the manufacture of squibs.

Spencer, manufacturing a similar product for Eastman Kodak, was using a building properly constructed for this type of manufacture and had the necessary safety equipment and devices. It was Spencer's declared intention to refurbish or build anew the buildings necessary for the squib contract. Spencer had been licensed by the State of New York to deal in and manufacture explosives. Spencer was successfully performing its contract with Kodak and was using equipment and safeguards necessary to manufacture the squibs. This included remote control mixing equipment.

Spencer conducted its operations at its own facilities, and the Government exercised no control except for periodic inspections designed solely to insure that the finished product met the contractual specifications.

The trial court found the Government was not negligent in awarding the contracts to Spencer and Spencer was not an incompetent manufacturer of explosives. We cannot say that finding is "clearly erroneous." Rule 52(a), F.R. Civ.P., 28 U.S.C.A. United States v. Yellow Cab Co., 338 U.S. 338, 77 S.Ct. 177, 94 L.Ed. 150; United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978; McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; DeNicolo v. Palmer, 125 F.2d 126 (2 Cir., 1942).

II

■ Appellants claim, however, that even if the contractor was competent and selected in the exercise of due care, New York law places upon one who hires a contractor to perform inherently dangerous work the duty of taking reasonable precautions to safeguard employees of the contractor from harm. Specifically, the contention is that the Government should have insisted upon contractual provisions compelling Spencer to take certain safety precautions and policed Spencer's operations through adequate safety inspections so as to insure compliance. New York law lies at the base of this claim, for the

**634**

Federal Tort Claims Act imposes liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346 (b).

While New York law places upon one who hires an independent contractor to perform inherently dangerous work a duty to supervise, this duty applies only when the hirer controls the land where the work is being performed or has general supervision over a particular project which encompasses the work as an integral part. Moreover, New York also makes a distinction between business invitees and the public at large on the one hand and the employees of the independent contractor on the other.

Appellants cite several general statements from treatises and cases to the effect that where there is foreseeable risk of harm to others, it is the duty of one employing an independent contractor to provide in the contract or otherwise for necessary precautions. Most of the cases supporting these statements, however, apply the rule in situations where an owner of land [1] hires a contractor to produce a product or service on the land or a general contractor [2] subcontracts part of the work on a particular project under his general supervision to another. None of the cases relied upon involve a situation where the independent contractor had his own plant approved by the state in which it was operating, worked solely on his own land and within his own buildings, used only his own tools and equipment, and was hired merely to deliver a finished product elsewhere.

Other cases relied on by appellants further restrict recovery to members of the general public or invitees. In Person v. Cauldwell-Wingate Co., 176 F.2d 237 (C.A.2, 1949), Judge Hand made it clear that the decision approved the principle of a duty of the hirer to supervise in-

herently dangerous work of an independent electrical contractor in order to prevent injury to a "business visitor." 176 F.2d at 240.

The New York cases bear out the distinction between the contractor's employees and the public at large. Olsommer v. George W. Walker & Sons, 4 A.D. 2d 424, 166 N.Y.S.2d 323, 332, aff'd 4 N.Y.2d 793, 173 N.Y.S.2d 28; Wallach v. United States, 291 F.2d 69, 72 (2 Cir.). So do the cases from other jurisdictions —Corban v. Skelly Oil Co., 256 F.2d 775, 780 (5 Cir., 1958); Salmon v. Kansas City, 241 Mo. 14, 145 S.W. 16, at 22–25, 39 L.R.A.,N.S. 328 (re duty to inspect); 145 S.W. at 25 (re duty to select competent contractor).

Affirmed.

---

1. E.g., Paltey v. Egan, 200 N.Y. 83, 93 N.E. 267 (1910); Pierce v. United States. D.C., 142 F.Supp. 721 (E.D. Tenn.), aff'd 235 F.2d 466 (6 Cir.1956).

2. E.g., Hooey v. Airport Construction Co., 253 N.Y. 486, 171 N.E. 752 (1930); Person v. Cauldwell-Wingate Co., 176 F. 2d 237 (2 Cir.1949).